## South Covington & Cincinnati Street Railway Co. v. Lee.

(Decided May 7, 1913.)

Appeal from Kenton Circuit Court
(Criminal Law and Equity Division).

1. Guardian and Ward—Appointment of Guardian—Jurisdiction—Void Appointment—Section 2015, Kentucky Statutes.—Where an infant is not a non-resident owner of real estate, or the appointment of the guardian is not made by the will of his father or mother, only the county court of the county where the infant resides has jurisdiction to appoint a guardian. The appointment of a guardian by the county court of a county in which the infant does not reside, and the acts of the guardian pursuant to such appointment, are void.

2. New Trial—Newly Discovered Evidence—Sufficiency and Effect.—A new trial on the ground of newly discovered evidence will not be granted unless the evidence be of a decisive character, and such as to render a different result reasonably certain.

3. New Trial—Newly Discovered Evidence—Sufficiency and Effect.—
A new trial will not be granted on the ground of newly discovered
evidence when the evidence tends only to discredit or impeach a
witness.

ROBERT C. SIMMONS for appellant.

B. F. GRAZIANI for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER.—Affirming.

In this action for damages for personal injuries
against the defendant, South Covington & Cincinnati
Street Railway Company, plaintiff, Rosa Lee, recovered
a verdict and judgment for $3,000. The railway company appeals.

According to the evidence for plaintiff, she was on a
visit to her married sister, Mrs. McVay, who lived in
Kenton county, South Latonia, On April 25, 1908, Mrs.
Winston, who lived near plaintiff's sister, informed
plaintiff that she and her daughter, Bessie Winston, intended to drive to Covington. Plaintiff asked permission to ride with them. They then started to town in a
covered spring wagon. Miss Winston sat on the right
side of the seat of the wagon and drove. Mrs. Winston
was seated on the left. Plaintiff sat in the rear of the
wagon. Immediately in front of her was an onion barrel
which had been cut in two. When they reached Covington and were driving down Madison Avenue near the
corner of Wallace Avenue, one of defendant's cars, without notice or warning, ran into the wagon from the rear.
Plaintiff was thrown across the sharp edge of the barrel
and injured. After the injury she returned to her home
in Glencoe, Gallatin County, Kentucky. Her physician
there advised an operation. She afterwards returned
to Covington and consulted Dr. Eckman, who placed her
in Speer's Hospital, Dayton, Kentucky, and performed
on her the operation of laparotomy. At the time of the
trial, plaintiff weighed forty pounds less than she did
before the accident.

It seems that Miss Winston was injured and the
wagon practically destroyed. Defendant's attorney compromised with Mrs. Winston and Miss Winston by paying them $125 each. Mrs. Winston qualified in Kenton
County as guardian for the plaintiff, who was an infant
at the time, and a like sum of $125 was paid to her in

compromise of plaintiff's claim. In addition to a denial of the allegations of the petition with reference to defendant's negligence and plaintiff's injuries, defendant not only pleaded contributory negligence of plaintiff, but also pleaded the aforesaid compromise as a bar to her right of recovery. Plaintiff filed a reply to the effect that she was a resident of Gallatin county, and not of Kenton County, and that the appointment of Mrs. Winston as her guardian was not only void, but was obtained by fraud.

Our attention has not been called to any prejudicial errors occurring on the trial. Indeed, the only ground urged for reversal is the error of the trial court in failing to award the defendant a new trial on the ground of newly discovered evidence. The affidavits filed by the defendant bear upon the residence of plaintiff at the time of the alleged compromise, and the cause and extent of her injury.

Among the affidavits filed is one of defendant's claim agent to the effect that upon a new trial the defendant would be able to show by Harry Gibson that plaintiff resided in Covington with the Crosthwaites and Wilsons during the year next preceding the accident; by Mike Culbertson that plaintiff resided for some time in Kenton County during the year proceeding the accident; by Mary Kerney that the plaintiff stayed with her a part of the time in Cincinnati during the year preceding the accident; by Mr. and Mrs. Shumate that the plaintiff resided in Kenton County during several months of the year preceding the accident; by John Wilson and Amanda Wilson that the plaintiff lived with them during the fall preceding the accident; by F. Crosthwaite that the plaintiff lived with them in Covington in August and a part of September, 1907. No affidavits of any of the parties mentioned in the affidavit of the claim agent, with the exception of F. Crosthwaite and John Wilson, are filed. Crosthwaite's affidavit is to the effect that plaintiff, who was then known as Rosa Lee Jones, lived with her husband, Luke Jones, at 1121 Prospect Avenue for a period of about six weeks during August and September, 1907. They then moved to 75 East 13th Street. The affidavit of John Wilson relates to a conversation occurring in September, 1907, between him and Luke Jones, plaintiff's husband. From this affidavit it may be inferred that plaintiff lived at 75 East 13th Street in September, 1907. The alleged conversation with her hus-

band is to the effect that Jones objected to his wife's working because she told affiant she was suffering from female trouble. In addition to the foregoing affidavits, the affidavit of Bessie Jones, a sister-in-law of plaintiff, is to the effect that during August and September, 1907, plaintiff lived at 1121 Prospect Avenue. It also contains a statement that plaintiff suffered continually with female trouble, and had pains in the region of her ovaries, especially when she did any work.

In addition to the foregoing affidavits, there is filed the affidavit of plaintiff made after the trial, and when she was under arrest charged with the crime of perjury. In this affidavit she says that she informed her attorney of the fact that she had lived in Covington several months before the accident; that her attorney told her that if she would testify to all that he told her to, they would get good money out of the accident. He also told her it would never do to testify that she lived in Kenton County before the accident, which conversation was in connection with the matter of the appointment of the guardian, which was then being discussed. The affidavit then goes on to relate certain facts which affiant alleges her attorney instructed her to testify to.

There is also in the record an affidavit made by plaintiff subsequently to her arrest, repudiating the statements contained in the above affidavit, and alleging that the above affidavit was obtained from her while she was under arrest, and by the fraud, threats and intimidation of the arresting officers and an attorney and claim agent of the defendant, and at a time when her mental condition was such that she did not appreciate what she was saying. To rebut this affidavit, there were filed the affidavits of several parties who were present when the first affidavit was made, to the effect that no coercion or fraud of any kind was practiced on her, and that she made the affidavit voluntarily and willingly, and knew exactly what she was talking about.

Counter affidavits of several prominent citizens of Gallatin County, to the effect that plaintiff was a resident of that county, were also filed. It further appears that at the time of the accident she had an action for divorce pending against her husband, Luke Jones, in the circuit court of Gallatin County, Kentucky, and that that court subsequently granted the divorce.

It further appears that on the trial of this case Dr. Eckman testified that he removed plaintiff's ovaries. In

his opinion, the condition of her ovaries was due to a blow or injury. It was necessary to remove the ovaries because of the inflammatory condition of the ovaries. He also stated that the trouble with which plaintiff suffered could have been caused by gonorrhea. When he got into plaintiff's pelvis he found it was not the result of gonorrhea. Subsequently, upon the trial of plaintiff for false swearing, Dr. Eckman testified as follows:

"I performed the operation called laparotomy. When I operated I found what I had already found by the examination, the retroverted womb, and ovaries misplaced. I removed the ovaries and Fallopian tubes, which were at that time filled with pus. I shortened the ligaments to restore the parts to their normal condition as far as possible."

He further testified that any infectious disease or inflamed condition of any kind would produce pus in the Fallopian tubes. He knew of no case where an injury produced pus in the pus tubes. Only a microscopic examination would determine what caused the pus in such cases. In the case under consideration there was no microscopic examination. He did not recall that there was any pus in the pus tubes, and did not remember whether there was any or not in plaintiff's case. On cross-examination, he said that his statement as to the existence of pus was made from the record at the hospital, and not from his recollection. He did not make the record. He had been asked to sign cards after the operation, but did not know who made the records of the operation. On his original examination, a day or two before, he testified:

"Q. You found in addition to that pus in the tubes leading from the ovaries?

"A. That was recorded in the hospital record.

"Q. Is it true?

"A. Yes, sir."

He further testified that the most frequent cause of pus in the tubes was gonorrhea; that it was estimated by some that 85 per cent. or 90 per cent. of the cases resulted from this cause, but he would say that it resulted from that cause in the majority of cases. He also said that he had not known of a case in his reading where the condition was produced from an injury, but that the condition in which he found plaintiff was absolutely due to the injury.

The claim agent, in his affidavit, also says that after the trial of the case Dr. Eckman told him that the trouble for which plaintiff was operated on had existed previous to the accident, and while the accident in question might have caused some aggravation of the trouble, it was not the cause of the operation which had been performed on plaintiff. In the rebuttal affidavit filed by Dr. Eckman, this statement is denied. In the rebuttal affidavit he distinguishes between the cause of the retroverted womb and the displacement of the ovaries and the existence of pus in the pus tubes. He says that the former was the cause of the operation, and that if pus tubes existed at the time of the operation, they were removed as they should have been. Dr. Eckman further says in his affidavit that if another trial is had and he is again summoned, his testimony will be the same as it was on the first trial.

The plaintiff's residence was a material issue in the case. She was not a non-resident owner of real estate, nor was the appointment of Mrs. Winston as guardian made by the will of her father or mother. That being true, only the county court of her residence had jurisdiction to appoint a guardian, and if at the time of the appointment plaintiff was not a resident of Kenton County, the appointment of Mrs. Winston was void, and the settlement which she as guardian made with defendant was also void. Section 2015, Kentucky Statutes; Ware v. Coleman, 6 J. J. Mar., 198.

On the trial, defendant's agent who made the settlement with Mrs. Winston testified that plaintiff told him that her residence was in Kenton County; that she was a married woman at the time but was not living with her husband; that she and her husband had lived with her sister, but had separated because of some disagreement. She was at her sister's house when she rode down with Mrs. Winston. Plaintiff's sister testified that plaintiff was married and came to live in Kenton County in 1907. Plaintiff and her husband first boarded with her sister, Sarah Holmes, near Latonia. They stayed there about two weeks and then went out to Mr. Ed. Hamilton's. Plaintiff came to live with witness three or four months before she got hurt.

While the affidavit of the claim agent refers to a number of witnesses by whom could be proven certain facts with reference to plaintiff's residence, affidavits of only two of these witnesses accompany the affidavit of

the claim agent, and no satisfactory reason is shown why the affidavit of the other alleged witnesses are not produced. That being true, only those affidavits that accompany the affidavit of the claim agent can be considered. City of Dayton v. Hirth, 121 Ky., 42; Travellers Insurance Co. v. McInerney, 119 S. W., 172.

There remain, then, only the affidavits of T. Crosthwaite, John Wilson and Bessie Jones. Crosthwaite's affidavit is to the effect that plaintiff lived at 1121 Prospect Avenue, Covington, Kentucky, for a period of about six weeks during August and September, 1907, when she and her husband moved to 75 East 13th Street. Wilson's affidavit is to the effect that plaintiff and her husband lived at 75 East Thirteenth Street in September, 1907. Bessie Jones' affidavit is to the effect that plaintiff lived at 1121 Prospect Avenue in August and part of September, 1907. In addition to these affidavits there is the affidavit of plaintiff made after her arrest, and which she repudiated the next morning, to the effect that she told her attorney that she had lived in Covington several months before the accident, but that he told her that it would never do to testify that she had lived in Kenton County before the accident. It will be seen that the newly discovered evidence relates entirely to the residence of the plaintiff during the fall of the year preceding the accident. Plaintiff's own affidavit shows merely that she had informed her attorney "that she had lived in Covington, Kentucky, for several months before the accident for which she brought suit against the street railway company." This statement may be true and yet her residence have been elsewhere at the time of the appointment of Mrs. Winston as her guardian in June, 1908. None of the affidavits show plaintiff's actual residence at that time. As a matter of fact, plaintiff may have resided in Covington for several months prior to the accident, and she may have resided there in the fall of 1907, yet this evidence is only a circumstance tending to establish that she actually lived there in June, 1908. It is the invariable rule not to grant a new trial on the ground of newly discovered evidence unless the evidence be of a decisive character and such as to render a different result reasonably certain. Hays v. Davis, 20 Ky. L. Rep., 342; C. & O. Ry. Co. v. Freil, 19 Ky. L. Rep., 152. The rule has also been stated as follows: "Newly discovered evidence not of a conclusive or preponderating character does not authorize a new trial." Shely v. Shely,

20 Ky. L. Rep., 1021; Oberdorfer v. Newberger, 23 Ky. L. Rep., 2323. Another statement of the rule is: To entitle a party to a new trial when the point upon which it is sought was in issue in the former trial, the newly discovered evidence must be of such a permanent and unerring character as to preponderate greatly or have decisive influence upon the evidence to be overturned by it. Owsley v. Owsley, 117 Ky., 47; Allen v. Perry, 6 Bush, 85; Paducah Ice Co. v. H. E. Hall & Co., 113 S. W., 104.

It is manifest that the newly discovered evidence relied on in this case does not come up to the required standard. The question is: What was plaintiff's residence in June, 1908? All the facts which it is claimed the new witnesses would testify to may be absolutely true, and yet they tend only to show that plaintiff lived with her husband in Covington at a period several months before the qualification of Mrs. Winston as her guardian. Opposed to this evidence is the fact that she left her husband and instituted an action for divorce against him in the month of April, 1908, and prior to the accident, as well as the testimony of several witnesses that she actually resided in Gallatin County at that time, and at the time of the qualification of her guardian. Under these circumstances we cannot say that the newly discovered evidence is so decisive in character as to render a different result reasonably certain.

The only newly discovered evidence that refers to the extent of plaintiff's injuries is the evidence given by Dr. Eckman on the trial for false swearing, which it is claimed is contradictory of his evidence given in this case. In this connection it is insisted that his evidence in this case was to the effect that plaintiff's injuries were caused by trauma, while his evidence in the criminal case tends to show that it was the result of a diseased condition. We have carefully read his evidence on the two trials, and when considered as a whole, it is doubtful if his evidence in the criminal case contradicts his evidence in this case to the extent claimed by counsel for the defendant. But even if this be the case, the effect of the evidence is simply to show that the witness on the trial of the criminal case made statements in conflict with his testimony in this case. Therefore, if the evidence now offered had been produced on the trial, it would still be an open question whether the witness swore to the truth on the first trial or on the trial of the case for false swearing. Manifestly the evidence now offered would be ad-

missible only for the purpose of impeaching the witness. It is the general rule that newly discovered evidence which tends only to discredit or impeach a witness does not authorize a new trial. L. & N. R. R. Co. v. Tinkham's Adm'x., 19 Ky. L. Rep., 1784; Louisville Insurance Co. v. Hoffman, 24 Ky. L. Rep., 980. We see no reason why this rule should not apply in this case.

Judgment affirmed.