W. D. SHAW ET AL. v. W. H. ROBERTS ET AL., Appellants.

**Executions:** ACTION TO SUBJECT PROPERTY: EVIDENCE. The owner of incumbered land mortgaged the same to secure the sureties on his notes, and pending foreclosure of the first mortgage conveyed part of the land to the wives of two of his sureties. Thereafter all the land was sold under foreclosure, the sureties purchasing a part of the same from the holder of the sheriff's deed, taking title in their wives, purchasing also the certificate of sale to the balance, and at the expiration of the period of redemption their wives received a sheriff's deed. The owner and his wife also conveyed the land to said sureties by an unconditional deed. *Held,* that the owner had no interest in the land which another surety could subject to the satisfaction of a judgment against him.

**Same.** In this action it is sought to subject the interest of the judgment debtor in the partnership business of breeding cattle to the satisfaction of the judgment against him, and the evidence is held to show an interest in defendant and to authorize a levy to satisfy the judgment.

**Same:** EXPENSE OF KEEPING AND SALE OF PROPERTY. Where an execution upon a judgment against one of two partners was levied upon partnership cattle, and the same were sold by agreement after they had been kept by the firm for some time to put them in condition for sale, the expense incident to the keeping was properly allowed the firm, and the creditor was only entitled to one half the proceeds of the sale less half the expense of the keeping and sale.

*Appeal from Adams District Court.*—HON. H. K. EVANS, Judge.

FRIDAY, OCTOBER 22, 1909.

ACTION in equity to subject real estate and personal property to the payment of judgments. There was a decree granting the plaintiff a part of the relief asked. Both parties appeal. The defendants will be designated appellants. —*Affirmed.*

*Maxwell & Maxwell* and *Burg Brown,* for appellants.

*Davis & Wells,* for appellees.

SHERWIN, J.—The plaintiff W. D. Shaw is the owner of two judgments against W. H. Roberts, one rendered in September, 1895, and the other in October, 1898. This ac-

1. EXECUTIONS: action to subject property: evidence.

tion was commenced in April, 1906, to subject certain real estate, the title to which stands in the name of Mary F. Roberts, wife of W. H. Roberts, and certain personal property, consisting of horses and cattle, to the payment of said judgments. Mary F. Roberts and George E. Roberts, son of W. H. and Mary F., claimed to be the absolute owners of all of the personal property. W. H. Roberts filed a cross-petition, alleging that certain lands had been deeded by him to the wife of W. D. Shaw for the purpose of securing the payment of certain debts of W. H. Roberts, and asking an accounting from said Shaw. There was a trial, and a decree finding that Mary F. Roberts was the owner of the real estate standing in her name, and that a part of the personal property, to wit, certain shorthorn cattle, were the property of W. H. Roberts and George E. Roberts, and subjecting the interest therein of W. H. Roberts to the plaintiff's claims. On the 1st day of February, 1888, W. H. Roberts held the title to eight hundred and seventy acres of land described as in sections five and eight. He was at that time heavily in debt and hopelessly insolvent. The plaintiff W. D. Shaw and John M. and James Roberts, brothers of W. H. Roberts, had theretofore become sureties for him for a large amount, and on said 1st day of February, 1888, he executed to Shaw and his said brothers a mortgage on all of the land in sections five and eight to secure the payment of certain Turner notes upon which the said mortgagees were sureties. All of this land was at that time covered by prior mortgages, and soon after the execution of the mortgage of February 1st fore-

closure proceedings were commenced on the prior mortgages and prosecuted to judgments. Pending the foreclosure proceedings, however, W. H. Roberts and his wife, on May 19, 1888, conveyed the east half of section five to Frances E. Roberts and the west half of the same section to Ann Roberts, who were the wives of J. M. and James Roberts. These conveyances were absolute warranty deeds. After judgments were obtained in the foreclosure proceedings, executions were issued, and all of the land was sold to satisfy the same, and on the 5th of September, 1889, D. S. Sigler, purchaser under one of said sales, obtained a sheriff's deed conveying to him all of the land in section five. The prior mortgage on the land in section eight was foreclosed and a sale made under execution, the period of redemption expiring on December 18, 1889. On September 19, 1889, Shaw and J. M. and James Roberts purchased all of the land in section five from D. S. Sigler, who had obtained title thereto through the sheriff's sale, and paid therefor a large amount of money, taking title in their wives' names. At the same time they purchased the certificate of sale of the land in section eight, and, at the expiration of the period of redemption, their wives received a deed to said land from the master of chancery of the court in which the foreclosure was had. These two transactions required about $13,000, and, to secure this amount, it was necessary to raise $10,000 by first mortgage on all the land involved. And, in order to enable the grantees to obtain this loan, W. H. Roberts and wife executed a quitclaim deed to the land in section eight.

The title stood in the names of the three wives until August, 1892. At that time Shaw, J. M. and James Roberts were indebted to Turner about $6,000 on a judgment, and he was threatening to make the same out of other land belonging to Shaw because J. M. and James Roberts were unable to assist in the payment thereof. With such conditions confronting them, J. M. and James Roberts, and their wives, executed a warranty deed to all of said land to Sarah

B. Shaw, the deed reciting that, in consideration thereof, Mrs. Shaw was to pay the grantors $1,500, and, in addition thereto, assume the $10,000 mortgage thereon. It was also agreed between the parties that Mrs. Shaw, as a part of the consideration for such conveyance, should pay the Turner judgment, which was subsequently done. The $1,500 was paid to the grantors, as agreed, and these payments, with the mortgages assumed, made the land cost Mrs. Shaw about $19,000, which was all or more than it was then worth. The Shaws sold section five and fifteen acres in section eight in 1894, and they and their grantees have been in the exclusive possession thereof since 1892. In 1896 Shaw was compelled to pay a note that he had signed with W. H. Roberts in 1886, and for this amount he obtained one of the judgments he seeks to collect in this action. Shaw and one Pringey were also compelled to pay a note for said Roberts, and the amount so paid is represented in the other judgment involved here. It is not claimed that either of these payments were in any way involved in the land transactions, or in any way secured by the conveyances thereof.

A mere recital of the foregoing facts would seem sufficient to demonstrate that W. H. Roberts has no valid claim of any kind against the land in sections five and eight. In the first place, the evidence is wholly insufficient to show the relationship of mortgagor and mortgagee. Mrs. Shaw obtained title from the wives of J. M. and James Roberts wholly independent of W. H. Roberts, and without any kind of an agreement with him, and the wives of J. M. and James Roberts derived their real title through purchase from Sigler and at an execution sale. The entire record shows quite conclusively that the conveyances were absolute, and were not taken as security by any of the grantees. *Bigler v. Jack,* 114 Iowa, 667; *Krebs v. Lauser,* 133 Iowa, 241.

Prior to his failure, in 1888, W. H. Roberts was a breeder of shorthorn cattle. After the failure he had left

one cow and one calf, and the herd that was levied upon in
this action originated largely from them. The
appellants claim that W. H. Roberts turned

2. SAME.

over this cow and calf, with some other exempt property,
to his wife and sons, and that the wife and George E. Rob-
erts were the owners thereof at the time the levy was made.
That George E. Roberts owned a one-half interest therein,
which he bought in 1902, is unquestioned, so that the only
dispute is over the ownership of the remaining interest.

The testimony of the family is to the effect that W. H.
Roberts did not own an interest therein, while the conduct
of the father, mother and son, during the years following
the failure, until the time of the levy in this action, points
strongly in the other direction. The family began accumu-
lating the present herd early in the 90's, and from that time
until 1906 the record shows that there were registered in
the herd book of the American Shorthorn Association one
hundred and twenty-one animals as being either owned or
bred, or both, by W. H. Roberts, or by W. H. Roberts and
G. E. Roberts. Prior to 1902, when George E. acquired
his interest in the herd, the registrations were made by W.
H. Roberts with the knowledge and consent of his wife, and
after George purchased an interest they were generally made
by him; he, as did his father in some instances, certifying
that the animals were owned by W. H. and G. E. Roberts;
and the son testified that the certificates so made by him
were true. Sales of their stock were also advertised in the
names of W. H. and G. E. Roberts, and in one instance at
least W. H. Roberts purchased additions to the herd at a
public sale of shorthorns, giving a note therefor signed by
himself, his wife and son. In fact, W. H. Roberts testified
on the trial that he assumed and had charge of the short-
horn business, and carried it on in his own name for many
years after the failure. That it was understood by his wife
and family that he owned an interest in the business can

hardly be doubted from the record before us. We are of the opinion, therefore, that the trial court correctly so found.

A levy was made on the stock as partnership property in April, 1906, and it was sold under stipulation in December of the same year. It sold for either $2,977.50 or $2,-997.50, and the trial court found the plaintiff entitled to but $1,199 of said sum. The plaintiff appealed from such finding, and now claims that he is entitled to $1,488.75, or one-half of the total amount for which the herd sold. The herd was appraised and a bond given soon after the levy, and during the time intervening before the sale in December it was kept and cared for at the expense of George E. Roberts. The expense of the sale and keeping amounted to about $900, as shown by the undisputed evidence. The herd was not in condition to sell to advantage before it was, in fact, sold, and hence the expense of fitting it for sale should be allowed the partnership. One-half of this amount, and one-half of the expense of the sale, would reduce the amount to which plaintiff is entitled to less than was awarded him. We think he has no reason to complain of the judgment.

The decree is right in all respects, and it is *affirmed*.

3. SAME: expense of keeping and sale of property.

