W. C. BARBER, Appellee, v. BUONANNI COMPANY et al., Appellants.

**INTOXICATING LIQUORS:** Injunction—Fermentation of Liquor
1  After Seizure—Evidence. Where a beverage was analyzed within 24 hours after it was purchased, and then revealed 4.48 per cent of alcohol by volume, the plea that such alcohol was caused by fermentation *after* it was purchased will not be entertained, in the absence of evidence as to the extent to which such beverage was exposed to the air and heat after such purchase.

INTOXICATING LIQUORS: Injunction—Good-faith ·Abandonment 2 of Business—Discretion of Court. Disregard of the plea that one should not be enjoined 'from the sale, etc., of intoxicating liquors because of good-faith abandonment of the business, is a matter resting quite largely in the discretion of the trial court. So held where such plea was rejected in the case of one who did not discontinue his ordinary business except as it involved the sale of cider.

INTOXICATING LIQUORS: Injunction—Motive of Prosecution. 3 In a prosecution for the unlawful sale, etc., of intoxicating liquors, the all-important consideration is not the motive actuating such prosecution, but the sufficiency of the evidence to show guilt or innocence.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

TUESDAY, MARCH 13, 1917.

ACTION in equity to enjoin an alleged liquor nuisance. There was a decree for plaintiff, and defendants appeal.— *Affirmed.*

*Thomas J. Guthrie* and *Miller & Wallingford,* for appellants.

*M. S. Odle,* for appellee.

PRESTON, J.—Defendants operate a candy store and sell soft drinks, cider and pop. The trial court in its opinion found and stated that defendant made sale of cider as a beverage, contrary to law; that he offered testimony tending to show good faith, which plea of good faith the court was not disposed to accept, because, among other reasons, the cider contained such a large percentage of alcohol.

It appears without dispute that, on September 28, 1915, one Tuttle purchased cider in defendants' place of business; that it was first placed in a jar and afterwards transferred into a bottle; that, at 10:30 the same evening, it was given to the chemist, Kinney, for analysis. The chemist analyzed it the next day and found that it contained 4.48 per

cent alcohol by volume. The bottle was corked and sealed.

The defendant, B. Buonanni, testifies that he had but one keg of cider, a 10-gallon keg, which he bought the day before; that he did not intend to handle cider again; that he took the keg back about 10 minutes after notice of this suit was served on him; and further:

"Q. How did you know to throw it out about 10 minutes after the notice was served? A. I saw it was against the law, and I never had broken the law before. Q. What did you see about the notice that made you think the cider was against the law? A. I suspicioned."

1. INTOXICATING LIQUORS: injunction: fermentation of liquor after seizure: evidence. 1. It is contended by appellants that the court erred in holding that the evidence showed, either directly or by a fair inference, that the cider purchased by Tuttle contained alcohol when purchased. In support of this they cite *State v. Knapp*, 177 Iowa 278, and *State v. Knapp*, 178 Iowa 25.

It will be noted that, in the instant case, the cider contained a larger percentage of alcohol. It was sold as a beverage, and, if it contained alcohol at the time of the sale, would come under the ban of the law. In the *Knapp* cases, the percentage of alcohol was small. In the criminal case, it was held that the presence of alcohol in whatever amount was sufficient to show that the liquors were intoxicating, and it was said:

"According to the concession of Dr. Cleaves, the evidence of alcohol at the time of his examination was so slight that it could have been produced by the fermentation of the preceding 24 hours."

It is there shown that the analysis was the next day after the seizure. It was also made to appear that, after the cider had been seized, it was placed in a steam heated basement, and the chemist testified that, under such circumstances, the analysis made by him would not be a fair test as

to whether or not the cider contained alcohol at the time it was seized; that, under the circumstances, it was likely that a chemical change did take place between the time the contents were put in the bottles and the time they were delivered to him. It was also shown in that case that, after the seizure of the liquor, a part of the contents was drawn into a vessel and then poured into bottles, and that alleged intoxicating liquors were seized in other localities at the same time and by different officers, and that the sheriff took a portion of the contents of each seizure, passing them all through the same vessel, without any attempt at cleansing or keeping one liquor from contaminating the other with its germs.

No such record as that is presented in the instant case. The record in the instant case is silent as to what extent the sample was exposed to the air after its purchase, or as to what extent it was exposed to the heat. The chemist did not testify that his analysis was not a fair test. We think the evidence was sufficient to justify the injunction. The defendant himself seems to have been pretty well satisfied that it was against the law, for he so testifies.

2. It is contended by appellants that

**2. INTOXICATING LIQUORS: injunction: good-faith abandonment of business: discretion of court.** no injunction should have issued, because of the claim that defendant in good faith quit selling cider, and that the court abused its discretion in granting the decree. Appellants cite on this proposition: *Patterson v. Nicol,* 115 Iowa 283; *Redley v. Greiner & Bossingham,* 117 Iowa 679; *Sawyer v. Termohlen,* 144 Iowa 247; *Tuttle v. Bunting,* 147 Iowa 153; *Offil v. Westbrook & Co.,* 151 Iowa 446; *Barr v. Neel,* 151 Iowa 458; *Fisher v. Skoglund,* 155 Iowa 440; *State v. Harrison,* 159 Iowa 67; *Batten v. Benge Drug Co.,* 162 Iowa 280; *Davidson v. Benevolent & Protective Order of Elks,* 174 Iowa 1.

Some of these are cases where parties had gone out of

business and closed the building, and others, where the court was satisfied that the party had in good faith abated the nuisance. In the instant case, the defendant's place of business was not closed, and he did not go out of business. He simply testifies that he has sold no cider since the transaction in question, and that he does not intend to. Under all the circumstances of this case, this is not sufficient. The facts here come more nearly within the following cases, cited by appellee: *Halfman v. Spreen,* 75 Iowa 309; *Judge v. Kribs,* 71 Iowa 183; *Danner v. Hotz,* 74 Iowa 389; *Donnelly v. Smith,* 128 Iowa 257; *Drummond v. Richland City Drug Co.,* 133 Iowa 266; *Tuttle v. Bunting,* 147 Iowa 153; *Fisher v. Skoglund,* 155 Iowa 440. The trial court did not err in overruling defendant's plea at this point.

3. INTOXICATING
LIQUORS: injunction: motive of prosecution.

A considerable part of the argument for appellants is devoted to the claim that Tuttle was a detective; that he was employed by the Anti-Saloon League; that defendant had quit the business in good faith; that defendant did not know that the liquor was intoxicating; that plaintiff did not serve notice upon the defendant and other alleged violators that they were conducting an illegal business; and that the suit was brought by the attorneys for the attorneys' fees; that the witnesses were in the business for the witness fees or for pay; and like questions. If it be true that the plaintiff or his attorney or the witnesses were acting in bad faith or manufacturing testimony and the like, such conduct would be reprehensible. The testimony of detectives is to be weighed in the light of that fact and their interest in the result of the case. But, after all, it is not so much a question of motive as of whether the evidence is sufficient to warrant an injunction in cases of this kind. In the instant case, the testimony is undisputed. All the matters just referred to are proper to be taken into account in determining any given case, but the arguments are worn

well nigh threadbare in some cases. Polk County contains a large city, and from this record we know enough of conditions, if indeed we should not take notice in a general way, to know that there are many violations in a city of the size of Des Moines. It is the opinion of this court that, in injunction suits where the evidence is sufficient to show violations of the law, injunctions ought to be promptly granted and without any evasion, and that in these cases, where indictments are returned and the evidence shows guilt, and a jury so finds, such sentences ought to be imposed as will tend to put down the illegal traffic, that it may be understood that law and law enforcement are not meaningless terms.

The decree appealed from is affirmed, and an attorney's fee taxed of $25 to appellee's attorney for presenting the case in this court.—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.