· CARRIE A. GILMORE *vs.* HUGH ROSS, and another.

Penobscot.  Opinion April 14, 1881.

*Negligence.   Steam-tug.*

In an action for damages against the owners of a steam-tug for running down and injuring the plaintiff who was in a row-boat, the gist of the action is the alleged negligence in the management of the tug; and whether or not the captain was a registered master, or licensed as a master or pilot, or that the tug had a right to be navigating the waters where the accident occurred, are immaterial and irrelevant facts.

ON REPORT.

Writ dated September 12, 1877.

Declaration — "In a plea of the case, for that the said plaintiff at. Northport, in said county of Waldo, on the 23d day of August, A. D. 1877, was in a small row-boat upon the waters of the Penobscot bay, a public thoroughfare for boats, vessels and steamers, and in the use of ordinary care, and the said Ross and Howell were, then and there, by their servants and agents, in possession of a certain steam tug-boat, called the C. B. Sanford, to the side of which said Ross and Howell by their servants and agents then and there in charge of the said steam tug-boat had

then and there attached a vessel, and was then and there towing the same by force of the steam of said tug-boat.

"And the said plaintiff avers that the said Ross and Howell by their said servants and agents, then and there in charge of said steam tug-boat and vessel thereto attached, so negligently, carelessly, and unskillfully managed said boat and vessel that the said vessel for want of good and sufficient management, then and there fell foul of, ran down, and capsized the said row-boat of plaintiff, in which she then and there was as aforesaid, and then and there threw the plaintiff into the water, and dragged her a great distance, to wit: five hundred feet, at great speed through the water, dislocated her right shoulder, broke one of her ribs, fractured two other of her ribs, jammed, bruised and otherwise injured said plaintiff internally and externally, by reason whereof her life was despaired of, and on account of all which she was greatly frightened and has endured great pain, agony and suffering, been put to great expense in surgical and medical attendance and for nursing, medicine and board, and has been obliged to give up her business, and has become, as she avers, permanently injured, maimed and disfigured for life, and disabled, all to the damage of said plaintiff (as she says) the sum of six thousand dollars."

Plea, general issue.

The material facts as found by the court, are stated in the opinion.

The court were to render such judgment upon the evidence so far as admissible as the legal rights of the parties require.

*Barker, Vose and Barker* and *A. J. Chapman,* for the plaintiff.

The plaintiff had a right to be in her boat, she was an expert in the management of it. The boat, oars and rowlocks, and the time and place were all suitable and proper, and she was in the use of ordinary and common care. The unexpected act of the master occasioned hurried rowing to avoid impending peril which caused the rowlock to slip out.

A party, having given another reasonable cause for alarm, cannot complain that the person so alarmed has not exercised

·cool presence of mind, and thereby find protection from responsibility for damages resulting therefrom. *Wesley City Coal Co.* v. *Healer*, 84 Ill. 126 ; *Saltonstall* v. *Stockton*, 1 Campbell, 11 ; 13 Peters, 181 ; 71 N. Y. 228.

The accident could have been avoided by reasonable care and ·diligence on the part of the defendants' servants. 24 How. 313.

The defendants were personally negligent in several particulars.

The captain was not a registered master nor licensed as a ·master or pilot. U. S., R. S., § § 4171, 4183, 4438, 4439, 4442, 4445, 4499, 4500, 5344. The steamer had no right to be navigating the waters of the bay. *Idem*, § § 4399, 4499.

She had not a full complement of men. *Idem*, § 4463 ; *The Young America*, 1 Brown's Ad. 549 ; *The Coleman and Foster*, *Id.* 456 ; *The Victor*, *Id.* 449.

She had no proper lookout. 13 U. S. Stat. at Large, 61, 81 ; *The Armstrong*, 1 Brown's Ad. 130 ; *The·Douglass*, *Id.* 105 ; 1 ·Clif. 343 ; 5 Blatch. 247 ; 1 Clif. 410 ; 13 Blatch. 517 ; 10 How. ·557.

She took an unusual and circuitous route. U. S., R. S., § 4233 : *Miller* v. *The W. G. Hewes*, 1 Woods, C. C. 363 ; 6 Wall. 225 ; 19 How. 241 ; *The Governor*, 1 Clif. 97 ; *The Merrimac*, 14 ·Wall. 203 ; *The Wenona*, 19 Wall. 41 ; *N. Y. &c. Co.* v. ·*Rumball*, 21 How. 372 ; 66 Maine, 376 ; 14 Wall. 189 ; 9 Wall. ·522.

*Wilson and Woodward*, for the defendants, cited : *Delafield* ·v. *Union Ferry Co.* 10 Bosw. 216 ; *Barnes* v. *Cole*, 21 Wend. ·188 ; *Pope* v. *Str. R. B. Forbes*, 1 Clif. 331 ; *St. John* v. ·*Paine*, 10 How. 557 ; *The Alleghany*, 9 Wall. 522 ; *Phila. & R. R. R. Co.* v. *Adams*, 8 The Reporter, 121 ; *The Milwaukee*, ·7 U. S. Dig. 734.

WALTON, J. This action is based on alleged negligence. The ·plaintiff says that while she was out in a small row boat, she was negligently run down and injured by the· defendants' steam tugboat. The case has been twice submitted to a jury, each time resulting in a disagreement. By agreement of parties the case

is now to be decided by the full court. The question is whether the alleged negligence is proved. We think it is not.

The case shows that the defendants were engaged in carrying passengers to and from Belfast and Rockland, and the camp-meeting grounds at Northport. Having more passengers than they could accommodate on their steam tug, on the afternoon of August 7, 1877, they lashed a schooner to the side of the tug, and, taking on board some five or six hundred passengers, left the wharf at Northport for Rockland. At this time, the plaintiff, a young woman about twenty-three years of age, was out in a small row-boat, unattended by any one except a child about six years old. As the steam tug started from the wharf, the plaintiff commenced to row out into the harbor. The steamer, on leaving, moved partly in a circle ; and, unfortunately, the plaintiff rowed directly into the course which the steamer took. While in this position, and not more than one or two hundred feet from the steamer, one of the plaintiff's rowlocks slipped out. This event seems to have so disconcerted or frightened her, that, instead of replacing the rowlock, or, in any way, endeavoring by the use of the remaining oar, to move her boat out of the way, she threw down her oars and threw up her arms, and, as she says, called to them to keep off. The captain of the tug immediately signalled the engineer to stop the tug and back as quickly as possible, and the engineer did so. But the tug was under such headway, and the plaintiff's boat was so near, that the impending collision was not avoided. The plaintiff having ceased all efforts to guide or direct her boat, it swung round, came directly under the bow of the schooner which was lashed to the side of the tug, and was capsized. A deck hand from the tug jumped into the water and supported the plaintiff and the little girl that was with her, till a boat from a vessel which was near by came to their assistance, and they were rescued.

A careful examination of the evidence fails to satisfy us that this accident to the plaintiff was owing in the slightest degree to any fault on the part of those in charge of the tug. If the accident was not the result of the plaintiff's own negligence, then, we think, it must be regarded as one of those unavoidable or inevitable accidents for which no one is to blame.

It is said that those in charge of the tug were negligent in not having a lookout. We think they did have a lookout. The captain himself was acting as a lookout. He occupied the best position on the boat for observation; and, although his eye was not on the plaintiff at the moment her rowlock slipped out, his attention was instantly called to her situation by a passenger who was standing at his side, and he then saw her, and a score of separate lookouts could not have secured more prompt action to avoid the collision than was then had. We think the accident is attributable in no degree to the want of a lookout.

It is further said that the captain of the tug was not the registered master, and that he was not licensed as a master or pilot, and that the tug had no right to be navigating the waters of the bay, and was liable to seizure. These are irrelevant facts. The owners of the tug are not being prosecuted for violations of law in these particulars. The gist of the action is alleged negligence in the management of the tug. All other matters are outside of the issue, and wholly immaterial. Our conclusion is that the alleged negligence is not proved.

*Judgment for defendants.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.