## Louisville and Nashville Railway Company v. Hulette.

(Decided October 17, 1916.)

## Appeal from Franklin Circuit Court.

1. Railroads—Frightening Animals—Damages.—It is not negligence in a railroad company to operate its trains or other instrumentalities necessary to transacting its business as a common carrier, including hand cars, in the usual and ordinary manner, and if horses or animals used or traveling upon the highway become frightened by such trains or instrumentalities, while being operated in the usual and ordinary way, and making no more than the usual and ordinary noise incident thereto, the company will not be liable for the injuries which might be produced by the animal becoming frightened; but if the agents and servants of the company know of the frightened condition of the animal, and, with this knowledge, operate such trains and instrumentalities is an unusual and unnecessary manner, so as to produce unusual and unnecessary noise, whereby the animal is caused to take fright and injure the plaintiff, the company is liable for the resulting damage.

2. Negligence—Submission of Question to Jury—Instructions.—Negligence, although charged in the petition, should not be submitted to the jury by the instructions, unless there is testimony to show that the alleged negligence had some causal connection with the complained of injury, or, in other words, that the injury was the proximate result of the alleged negligence.

3. New Trial—Newly-discovered Evidence.—It is the settled rule in this state to not grant a new trial for newly-discovered evidence if it is only cumulative, but where the newly-discovered evidence is not entirely cumulative, or when it is directed to a point upon which there was no evidence offered or heard upon the trial and, is of such a nature as to most likely have a preponderating effect upon the verdict of the jury, it is error to refuse to grant a new trial on this ground.

4. New Trial—Newly-discovered Evidence—Diligence.—The plaintiff claims that his injuries produced a curvature of his spine, known as Potts' disease. His physician witnesses give it as their opinion that it was most probably produced by the injury which plaintiff sustained. There was no testimony offered by defendant as to when this affliction of plaintiff appeared, or as to what produced it. Before the motion for a new trial was acted upon defendant filed the affidavit of its attorney and a physician living about 75 miles from the trial, showing that the witness could not have been discovered sooner, and that up to within a year before the accident the physician had treated plaintiff through a period of many years, and that he, during all that time, was afflicted with the disease mentioned. It was error to refuse to grant defendant a new trial, it being shown that due diligence was used.

5. Negligence—Contributory Negligence.—One of the defenses was a plea of contributory negligence, which was set out in concrete form, and there was evidence to support it. The trial court should have given, under such circumstances, a concrete instruction as ʰo the negligence of the plaintiff.

GUY H. BRIGGS and BENJAMIN D. WARFIELD for appellant.

LESLIE M. MORRIS and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Claiming to have been injured by being thrown from his vehicle, through his horse becoming frightened and running away, because of the negligence of the servants of appellee (defendant) in managing and operating a hand car at Conway Crossing in Franklin County, the appellee (plaintiff) brought this suit to recover damages for his injuries, and obtained a verdict for $5,000.00, upon which judgment was rendered, and to reverse that judgment this appeal is prosecuted.

It is alleged, in substance, in the petition, that as plaintiff approached the railroad track upon the highway, the servants of the defendant partially blocked the crossing with the hand car which, as he claims, at least slightly frightened his horse, but that he coaxed him by the car, and just as the wheels of his vehicle were between the rails of the track, with his horse, of course, beyond the rails, those in charge of the hand car made a sudden and unusual start or jerk of the car so as to produce a loud and unusual noise, which caused his horse to lunge, and in the runaway which followed he was thrown from his vehicle against a rock, or some hard substance, whereby he sustained the injuries of which he complains. The answer is a traverse of the petition and a plea of contributory negligence.

Upon the trial the plaintiff testified in substance that the accident occurred somewhere between seven and seven-thirty a. m.; that as he approached the railroad track, and when in about 48 yards of it, he saw the hand car, which was at that time on the ground, near the railroad track, and that it was picked up by the servants of the defendant and placed upon the track, with the handle bars extending out over the edge of the highway to something near the middle of it; that about that time his horse threw up his head and showed indications of fright, but

that he concluded he could coax him by and that he did
proceed to do so, but just as his horse cleared the far
rail, and while his vehicle was between the rails, "the
hand car started with a loud jerk, making a great deal
of noise from some tin buckets hanging on the car, and
some cups and pails hanging on the car, and the horse
made a spring, and when he did he left the road going
toward the creek." He says in his cross-examination,
as stated, that he saw the location of the hand car on the
track, partially on the highway but, "I thought my horse
might frighten a little but I could coax it along just by
talking to it," and he shows that the car was made to
start by pushing it or shoving it, and not by working of
the lever. Plaintiff's testimony as to how the accident
occurred is, in its essential particulars, corroborated by
his son and daughter who were riding with him on that
occasion, but it is, if anything, more clearly shown by
these two latter witnesses that the plaintiff, after see-
ing the hand car as described by him, and after his horse
had shied, continued to proceed in his effort to force the
horse past the car. Many witnesses testified in behalf
of the defendant to the effect that the car was never off
of the track, except while being turned around; their tes-
timony is that they had gone to that point that morning
to bring back to Frankfort a Mr. McCray, who was su-
pervisor of the defendant, and who had gone up there for
the purpose of inspecting and receiving some crossties;
that they did not have on the car any buckets, cups or
utensils of any kind, as they were not then on a mission
of working on the track, and had no occasion to carry
along any lunch; that their intention was to immediately
return with the supervisor as soon as he was ready to
do so; that upon arrival at the crossing they immediately
proceeded to turn the car around, and about that time
the plaintiff approached on the highway and that the
hand car was not occupying any part of it, but that the
plaintiff's horse slightly shied as he approached upon
the track, whereupon plaintiff made some such remark
as "You fool, you, didn't you ever see a hand car?" and
then commenced to strike the horse with the lines and
to jerk him and thereby caused him to run away.

As to the injuries, the testimony of plaintiff shows
that when he fell he struck some part of his shoulder,
and for a very short while had a headache, but this soon
passed away, leaving him with severe pains in his back;

that a couple of his lower ribs were afterward found to be disconnected from the spine and are now what the doctors describe as "floating" ribs. It was shown by physicians who testified in his behalf, and is admitted, that he is afflicted with curvature of the lower spine, known by the profession as Potts' disease, and it is claimed that this condition is one of the results of the injury. Plaintiff testified that he was never so afflicted before, or that if he was he did not know it, and he produces a non-professional witness who claims to have seen him in an undressed condition before the accident, and that he did not observe any such curvature in plaintiff's spine. A physician who testified on behalf of the plaintiff, and the one who attended him at the time, upon the question of the curvature of the spine being the result of the accident, said: "Well, the spine is braced by muscular attachments to the ribs; these two floating ribs have muscular attachments, and by being broken loose on one side, these muscular attachments on the other side, of course, will tend to pull the backbone over in the other direction." Other physicians testified in behalf of the plaintiff on this point substantially as the one from whom we have quoted. While on the other hand professional witnesses for defendant gave it as their opinion that the curvature of the spine was not produced by the accident. It seems to be conceded that the plaintiff and his family are possessed of tubercular characteristics, and it is shown that with such persons the spinal affliction of which he complains is frequently congenital, and the physicians introduced by the defendant gave it as their opinion that this was the case with plaintiff. However, none of them, nor any physician who testified for either party, knew positively of plaintiff's condition, in this respect, prior to the accident.

The motion for a new trial was filed on the 19th day of September, 1914, and before it was acted upon, and on the 30th day of September following, the motion was amended whereby newly-discovered evidence was relied on. This newly-discovered evidence is that of Dr. O. B. Demarre, who, according to his affidavit, and that of defendant's attorney, was the family physician of the plaintiff in Franklin County from 1892 until 1908, and that he frequently examined and treated the plaintiff, who, during all that time, "was afflicted with what is known as Potts' disease, and as a result thereof had a well-defined

posterior lateral curvature of the spine at the lower part of the dorsal region. He says that the said Potts' disease is of a chronic character, and is probably tubercular, as that is a characteristic of the entire Hulette family." It is shown that since 1913 Dr. Demarre has been living in Montgomery County, some seventy miles or more from Frankfort, the place of the trial, and by the attorney it is shown that he did not know that this physician had ever practised in the family of the plaintiff until after the trial; that the information was then furnished to him by a local physician under a promise of absolute secrecy. There is absolutely nothing appearing in the record to show any way or manner by which the defendant or its attorneys could have discovered the testimony of this physician witness, as is shown by the latter's affidavit that he did not communicate his knowledge of the facts to any one connected in any manner whatever with the railroad company. There is, therefore, no reason to insist on a want of diligence in failing to discover this witness before the trial.

The question, then, is—does his testimony bring the case within the rule of this court permitting a new trial for newly-discovered evidence? This court is reluctant to grant a new trial upon newly-discovered evidence, adhering to the rule that public interest is best subserved by bringing about as speedy trials as possible, and the resultant termination of litigation. To this end, it is the firmly established rule that newly-discovered evidence, which is purely cumulative, will not authorize the granting of a new trial. But this policy of the court, as applied to the granting of new trials, should not be followed at the expense of the paramount purpose of all trials, which is to administer justice between the parties; and notwithstanding the above policy, long followed by this court, the qualifying rule has been adopted that where the newly-discovered evidence is not altogether cumulative, and is of a decisive nature, and such as to render a different result reasonably certain, and most probably would have affected the verdict of the jury, if due diligence is shown in discovering and producing it, a new trial will be granted. Many cases from this court hold to the rule just stated, the latest of which are: Anshutz v. Louisville Railway Company, 152 Ky. 741; South Covington & C. St. Ry. Company v. Lee, 153 Ky. 621; Weaks v. McDowell Construction Co., Idem, 691;

Goddard v. Latta, 152 Ky. 538; C., N. O. & T. P. Ry. Co. v. Cecil, 164 Ky. 377, and authorities referred to in these cases.

In the Anshutz case the conditions were very similar to those we have here. It was a personal injury case. The plaintiff, a lady, upon the trial was found to be afflicted with a tumor, which she claimed, and the evidence tended to establish it, was produced by the accident. It necessarily had great weight with the jury in fixing the amount of her damages. It was afterwards demonstrated by a process of nature that the supposed tumor was not one at all, but something entirely different, as will be seen by a reference to the case, and after this discovery was made a petition for a new trial was filed in the court, because of the discovery of this new evidence. In that case this newly-discovered evidence, as to the cause of the supposed tumor, was as much cumulative as is the proffered testimony of Dr. Demarre in the instant case, and while the newly-discovered testimony in that case was more convincing than that of Dr. Demarre in this case, still that question goes only to the credibility of the testimony, and not to its admissibility. As we have seen in the case we are considering, there was at least no professional testimony that the condition of plaintiff's spine antedated the accident, and to this extent the newly-discovered evidence is not purely cumulative. Indeed it is not insisted that this evidence is of the cumulative character which would prevent the granting of a new trial because of it, the chief contention of appellee being that due diligence was not shown to discover this testimony, a point which we have already considered. When we look at the size of the verdict, examine the evidence and find that the chief injury which plaintiff claims to have sustained is the condition of his spine, we are forced to the conclusion that the evidence of Dr. Demarre is of such a decisive nature as to make it reasonably certain that a different verdict may have been reached by the jury.

The rule authorizing a new trial for such newly-discovered evidence, to which we have adverted, is well stated in the last case referred to, when this court says: "From an examination of all these cases the rule is to be deduced that where the newly-discovered evidence is of such conclusive nature, or even of such decisive or preponderating character, that it would with reasonable

certainty change the verdict or materially reduce the recovery, a new trial should be granted, if it is satisfactorily shown why the same was not discovered and produced at the trial.'' We are convinced that the defendant brought itself within the rule of diligence required in order to obtain a new trial for newly-discovered evi-. dence, and that such evidence would be reasonably calculated to have produced a different result, and that the court erred in failing to grant it a new trial upon this ground.

In view of the fact that there must be a new trial, it is necessary that we consider the objections made to the instructions which the court gave to the jury. It is insisted that the defendant was entitled to a peremptory instruction in its behalf, but we are unable to agree with this contention. The law is that a railroad company has a right to operate its trains, and all of its instrumentalities necessary to the conducting of its business as a carrier in the usual and ordinary way; and if animals on the highway become frightened by the movement of trains, including hand cars, in the usual and ordinary way, no liability arises for any injuries that might be produced, and this is the rule prevailing in this State, as will be found from the following cases: Hudson v. L. & N. R. R. Co., 14th Bush, 303; Ohio Valley R. R. Co. v. Young, 19 Ky. Law Rep., 158; L. & N. R. R. Co. v. Smith, 107 Ky. 178; L. & N. R. R. Co. v. Howerton, 115 Ky. 89; Christie v. L. & N. R. R. Co., 124 S. W. (not to be reported) 796.

In the Howerton case the alleged negligence was charged to have been produced by the wrongful operation of a hand car. There was no evidence to show that the operation of the hand car there involved was out of the usual and ordinary manner of operating such cars, and although the plaintiff's horse became frightened, resulting in her injury, a recovery was denied. In the course of the opinion, the court, quoting from the case of McCerrin v. Ala. and Vicksburg R. R. Co., 72 Miss. 1013, said: ''The defendant had the right to operate its car in the usual and customary way, and at a safe rate of speed, but had no right to convert it needlessly into a terror-inspiring thing, and for such departure from propriety would undoubtedly be liable in damages for any injury caused by this negligence to one free from fault; but rapidity of movement, noises and sudden appear-

ances are common incidents of the operation of railroads, and one complaining of hurt from these causes must show clearly a departure by the defendant from custom and propriety, to warrant recovery. Railroads operating trains and hand cars have the right to make all reasonable and usual noises incident thereto, whether occasioned by escaping steam, griping of cars, etc.''

In the Christie case it is said: ''It is conceded that the rule is that unless those in charge of the train caused it to make unusual and unnecessary noises, and prudently operated it, they not knowing of the presence of the horse, the company is not liable.'' From the foregoing authorities it is manifest that the converse of the proposition must be true, i. e., if the servants of the defendant know of the fright of the plaintiff's animal, they should refrain from doing any unusual and unnecessary thing in the operation of the train or instrument which they have in charge that would be reasonably calculated to increase the fright of such animal, and cause it to do plaintiff injury or harm. If they violate their duty in this respect, and injury and damages follow, the defendant is liable. In this case there is nothing in the evidence to show any negligence on behalf of the defendant in the stopping of its hand car, either at, on or near Conway crossing. Whether it had previously been put upon the ground by the side of the railroad track, as testified to by plaintiff, or not, those in charge of it had the right to either place it back on the track or to turn it around, as they contended was all they did. This operation, whether it be the one or the other, was seen by the plaintiff, and although his horse may have shied because of it, it is manifest from his testimony that the sudden lunge and resultant runaway was not produced because of the location of the car, such location, according to his testimony, having no causal connection with the subsequent fright of his horse and consequent runaway. Indeed he says as much in his testimony when he was asked: Q. ''What started your horse lunging?'' A. ''The hand car.'' Q. ''The starting up of the hand car?'' A. ''Yes.'' His daughter, who was in the vehicle with him, says as much in her testimony, when she was asked: ''Did your father have any difficulty in getting him on by?'' A. ''No, sir, just spoke to him and he went on by.'' Q. ''When you were in that position the men started the hand car and scared your horse?'' A. ''Yes.''

The son of plaintiff, who was in the vehicle with him, testified: Q. "What did the men do?" A. "They picked up the car and set it on the crossing and we was going to drive by and the horse saw it and got around it and they shoved the car and scared the horse." From this it is manifest that the court should have said nothing in instruction No. 1 with reference to the obstruction of the crossing, as there is nothing in the testimony to show that such obstruction, if it did exist, was the proximate cause of his horse becoming frightened and producing the injury complained of. The only testimony having a tendency to establish plaintiff's claim is that relating to the starting of the car with an unusual and unnecessary jerk, and producing unusual and unnecessary noise, whereby the horse was made to lunge and run away. Under the authorities from this court, to which we have referred, if the horse at that time was in a frightened and nervous condition, and the agents and servants of the defendant knew this, and with that knowledge they started the car in an unusual and unnecessary way, and caused it to produce an unusually loud and unnecessary noise which would be reasonably calculated to frighten the horse, the defendant would be liable for the consequence, and the case should be submitted to the jury upon this idea alone. In other words, the only proven case made by plaintiff's evidence is that of defendant's servants starting the hand car suddenly and with unusual and unnecessary force, so as to produce an unusual and unnecessary noise at a time when they saw the frightened condition of plaintiff's horse, and may have had reason to believe that such conduct by them might increase the fright of the horse and cause it to run away. The instructions on another trial, if the evidence should be substantially the same, should submit this issue alone to the jury.

The two defenses made are, first a denial of all of the allegations in the petition, and second that plaintiff sustained his injuries because of his contributory negligence "in his treatment of the horse at the time." Its testimony on this point was directed to the fact that plaintiff whipped his horse with his lines, causing it to run away. Its contributory negligence plea was both concretely stated and testified to. We are therefore of the opinion that the instruction on contributory negligence should have embodied in it, in concrete form, the

acts constituting such contributory negligence on the part of plaintiff as is both pleaded and testified to. None of the other questions relied on in the motion for a new trial are passed upon in this opinion.

For the errors indicated, the judgment is reversed, with directions to grant a new trial, and for proceedings consistent with this opinion.