### ST. LOUIS, B. & M. RY. CO. v. PRICE.
### (No. 474–3910.)

(Commission of Appeals of Texas, Section B. Feb. 18, 1925.)

**1. Railroads ⬅324(3)—Ordinary care required toward driver of unregistered automobile.**

Railroad was required to exercise ordinary care to avoid injury to automobile driver at public crossing, though driver had not registered car, under Vernon's Ann. Pen. Code Supp. 1918, art. 820a, making failure to register automobile a misdemeanor.

**2. Railroads ⬅312(4)—Lookout required.**

A railroad is required to keep lookout for people wrongfully on track at any point.

**3. Negligence ⬅6—Violation of statute negligence.**

The violation of a statute is negligence.

**4. Negligence ⬅82—Violation of statute must be proximate cause of injury.**

Plaintiff's violation of statute, to constitute negligence precluding recovery, must have been proximate cause of injury.

**5. Railroads ⬅346(5) — Burden of proving violation of statute proximate cause of collision is on defense.**

In automobile driver's action against railroad for injuries sustained in crossing collision, railroad, to defeat recovery on ground that driver was contributorily negligent in not paying license tax under Vernon's Ann. Pen. Code Supp. 1918, art. 820a, and because of other infractions of automobile statutes, had burden of showing that such infractions were proximate cause of collision.

**6. Railroads ⬅335(5) — Failure to register automobile held not proximate cause of collision.**

Failure of automobile driver to register automobile under Vernon's Ann. Pen. Code Supp. 1918, art. 820a, *held* not proximate cause of collision with train at crossing, in the absence of evidence showing connection between collision and violation of such statute.

**7. Railroads ⬅352—Finding as to speed of automobile held not finding of violation of statute.**

Jury's answer of "6 to 8 miles" to question as to speed at which plaintiff drove automobile "from the time of turning off the main highway until the time of the collision" *held* not a finding that driver exceeded 6 miles per hour within 30 feet of track, in violation of Vernon's Ann. Pen. Code Supp. 1918, art. 820l, the distance covered by question being much more than 30 feet.

**8. Trial ⬅352(1)—Defendant required to present defense in proper way in case submitted on special issues.**

In automobile driver's action for injuries sustained in crossing collision, submitted to jury on special issues, railroad, to avail itself of defense that plaintiff drove automobile in excess of 6 miles per hour within 30 feet of track, in violation of Vernon's Ann. Pen. Code Supp. 1918, art. 820l, was required to present such defense to jury in proper way.

**9. Railroads ⬅335(5)—Unlawful speed of automobile must be proximate cause of collision.**

Operation of automobile at a rate of speed in excess of 6 miles per hour, within 30 feet of track, in violation of Vernon's Ann. Pen. Code Supp. 1918, art. 820l, to preclude recovery for injuries sustained when struck by train, must have proximately caused collision.

**10. Appeal and error ⬅930(3) — Defendant presumed to have consented to trial court's determination of issue not submitted by defendant.**

Where railroad claimed that automobile driver was contributorily negligent in driving automobile faster than 6 miles per hour, within 30 feet of track, in violation of Vernon's Ann. Pen. Code Supp. 1918, art. 820l, but did not submit special issue of whether such negligence was proximate cause, the railroad must be assumed to have consented to determination of question by trial court.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by C. E. Price against the St. Louis, Brownsville & Mexico Railway Company. Judgment for plaintiff was affirmed by Court of Civil Appeals (244 S. W. 642), and defendant brings error. Affirmed.

Graham, Jones, William & Ransome, of Brownsville, and E. H. Crenshaw, Jr., of Kingsville, for plaintiff in error.

Canales & Davenport, of Brownsville, for defendant in error.

POWELL, P. J. The nature and result of this case have been accurately stated by the Court of Civil Appeals as follows:

"Appellee filed this action against appellant to recover damages to his person and to his automobile through a collision between the automobile and a car operated by appellant. It was alleged that on or about September 6, 1920, appellee drove his new Cadillac automobile on the crossing of the railway by a public road, and was struck by a baggage car, which was pushed by a locomotive against his automobile destroying it and seriously and permanently injuring appellee. Appellant filed general and special exceptions and a general denial, and pleaded contributory negligence in that appellee was running upon the track at an illegal speed, and not using any care to discover approaching trains. The cause was submitted to a jury on 27 special issues, and on the answers thereto judgment was rendered in

favor of appellee for $2,175. The cause is before this court on assignments of 32 errors."

Upon appeal to the Court of Civil Appeals that court approved the trial court's award as to damages to the car in the sum of $1,-675. But it found that there was no pleading to sustain the award totaling $200 for injuries to the spine and right arm of Price. Therefore it required a remittitur of $200. The latter was forthcoming, and, as so reduced, the judgment of the trial court was affirmed. See 244 S. W. 642.

The controlling question before this court is the correctness or incorrectness of the following portion of the opinion of the Court of Civil Appeals:

"The evidence showed that appellee had no license from the state to operate an automobile, and it is the contention of appellant that it could not be held liable for destroying his property and injuring his person, unless, as in the case of any trespasser, it discovered his peril in time to have prevented the collision. We cannot sustain such a theory. The failure to have the license did not in any manner contribute to the collision, unless we apply the far-fetched rule that, if he had not violated the law, he would not have been in the automobile, and consequently could not have driven on the crossing, and consequently would not have been struck. The act of appellee in failing to get a license did not in any manner contribute to the collision."

Price had traded for this secondhand car in Ellis county. He went on to Cameron county and negligently failed to procure a new license number for 1920, the year the accident happened. Under our Penal Code, Act of 1917 (Vernon's Ann. Pen. Code Supp. 1918, art. 820a), it is provided:

"Any person owning and operating a motor vehicle or motorcycle on the public highways of this state after the taking effect of this act, without the number plates displayed thereon, in accordance with the requirements of this act, or anyone owning and operating a motor vehicle or motorcycle, without the distinguishing seal provided by the department for each year, shall be guilty of a misdemeanor and, upon conviction, shall be fined in any sum not less than ten ($10.00) dollars nor more than twenty-five ($25.00) dollars for each violation, and each day such motor vehicle or motorcycle is operated upon the highways of the state in violation of the provisions of this act, shall constitute a separate offense."

Our statutes further provide that fines so imposed shall "constitute a special maintenance fund to be expended upon the public roads of the respective counties where collected."

It is the contention of the railway company that, since this penal statute was violated by Price, he was a trespasser or outlaw when injured, and cannot recover, since the jury found he was not willfully, wantonly, or recklessly injured by the company's employees. The important query is whether or not a violation of this statute, constituting a misdemeanor, deprives Price of his right to have operatives of trains exercise ordinary care to avoid injuring him. This is a new question in the Supreme Court of our state. The railway company relies upon the decisions of the Supreme Court of Massachusetts. That court does hold that the failure to comply with the statute of this kind renders the motor driver an outlaw to whom no care is owed except to refrain from willfully injuring him. The doctrine in Massachusetts had its origin in the old Puritanical laws against violation of the Sabbath, when no one was supposed to be on the streets except to go to church or meet some real emergency.

The leading Massachusetts case involving an unlicensed or unregistered automobile, and announcing aforesaid doctrine, is that of Dudley v. Northampton St. Ry., 202 Mass. 443, 89 N. E. 25, 23 L. R. A. (N. S.) 561. This last-mentioned decision was by a divided court. That same court, in later decisions, has shown some reluctance in following the Dudley Case. For instance, in Bourne v. Whitman, 209 Mass. 155, 95 N. E. 404, 35 L. R. A. (N. S.) 701, the court, commenting on the Dudley Case, said:

"Some of us were disinclined to lay down the law so broadly, and the opinion of the court was not unanimous; but the doctrine has been repeatedly reaffirmed, and is now the established law of the commonwealth."

Again, it is interesting to note that the Massachusetts court refuses to enlarge the registration holding or broaden it out to other automobile regulation statutes. A notable example of this is to be found in the case of Bourne v. Whitman, supra, where it is held that the law of these * * * cases should not be extended to the provision of the statute requiring each operator to have a personal license to operate the car. But Massachusetts is tied to its decisions in such a way that we are frank to say that, if its Supreme Court had the case at bar before it, that court would probably render judgment in favor of the railway company. So far as we can find, no other state follows this Massachusetts doctrine. Most of the states have very similar statutes, all of recent enactment, regulating the registering and licensing of automobiles.

Mr. Huddy has written a rather exhaustive discussion on the law of automobiles. On page 154 et seq., §§ 126 and 137, he declares that, as to the effect of nonregistration and nonlicense of cars, the other states have not followed the Massachusetts court, and that the great weight of authority is against the Massachusetts doctrine. The author cites cases from Wisconsin, Washington, Pennsylvania, Rhode Island, Virginia, Alabama, California, Florida, Illinois, Iowa, Kansas, Kentucky, Minnesota, and Missouri.

In considering this same question in an-

other case (Pyeatt v. Anderson [Tex. Com. App.] 269 S. W. 429) now before us, Judge Gill, of counsel for plaintiff, states:

"The following cases from various states of the union repudiate the Massachusetts doctrine and sustain our contention: Black v. Moree, 135 Tenn. 73, 185 S. W 682; Cobb v. Cumberland, supra; Railway Co. v. Moore, 149 Ga. 581, 101 S. E. 668; Hersman v. Roane Co., 86 W. Va. 96, 102 S. E. 810; Southern Ry. Co. v. Vaughan, 118 Va. 692, 88 S. E. 305, L. R. A. 1916E, Ann. Cas. 1918D, 842; Stack v. General Baking Co., 283 Mo. 396, 223 S. W. 89; Armstead v. Lounsberry, 129 Minn. 34, 151 N. W. 542, L. R. A. 1915D, 628; Railway v. Ætna, 184 Ala. 601, 64 So. 44; Hemming v. City, 82 Conn. 661, 74 A. 892, 25 L. R. A. (N. S.) 734, 18 Ann. Cas. 240; Railway v. Weir, 63 Fla. 69, 58 So. 641, 41 L. R. A. (N. S.) 307, Ann. Cas. 1914A, 126; Shaw v. Thielbahr, 82 N. J. Law, 23, 81 A. 497; Moore v. Hart, 171 Ky. 725, 188 S. W. 861; Barber v. B. Buonanni Co., 179 Iowa, 642, 161 N. W. 688; Derr v. Chicago, M. & St. P. R. Co., 163 Wis. 234, 157 N. W. 753; Switzer v. Sherwood, 80 Wash. 19, 141 P. 181, Ann. Cas. 1917A, 216; Salo v. P. Coast Casualty Co., 95 Wash. 109, 163 P. 385, L. R. A. 1917D, 613; Dervin v. Frenier, 91 Vt. 398, 100 A. 760; Marquis v. Messier, 39 R. I. 563, 99 A. 527; Shimoda v. Bundy, 24 Cal. App. 675, 142 P. 109."

We think, after careful reading, that Judge Gill is correct in above statement.

It is interesting to quote from a few of the decisions repudiating the Massachusetts doctrine. A very able opinion is that of the Supreme Court of Maine in the case of Cobb v. Cumberland County Power & Light Company, 117 Me. 455, 104 A. 844. The statutes of Maine are practically identical with our own. In this Cobb Case, the court says:

"We therefore take up our own statute, with a view to determining whether the Legislature, in the case of nonregistration, has created a duty to other travelers on the highway, or only a public duty to be enforced in the ordinary administration of the criminal law; in other words, whether the offender is in effect penalized beyond the express provisions of the statute.

"The general rule, which needs no citation of authorities, is that penal statutes are to be construed strictly, and not to be extended beyond their obvious import. The penalties to be imposed are those expressed in clear and explicit terms. Inferential penalties are not to be discovered and enforced."

We must determine, therefore, whether the Legislature of Texas intended, not only to punish the offender by imposing a nominal penal fine, but also by withdrawing from him the right to demand the exercise of ordinary care by those who operate locomotives across public highways. We do not think the Legislature so intended. Upon this point, we agree with Judge Gill in his brief aforesaid, where he declares:

"Had the Legislature intended to forfeit civil rights, would they not likely have said so?

On what ground shall we conclude that it was left to the courts to impose this awful penalty, far exceeding the penalty named in the law itself? The right of protection against the negligence of others is one of the most valuable rights of a citizen. It involves the protection of life and limb and compensation for loss of life and mutilation. These rights should not be lightly frittered away. It is unlikely the Legislature would have so provided had it considered the proposition at the time of the passage of the law."

As showing the indisposition of the courts to read into penal statutes the withdrawal of civil rights also, we quote as follows from the Supreme Court of Maine in the Cobb Case, supra:

"An apt and striking illustration may be found in the legislation and decisions of Connecticut on the precise point under consideration. Under the Public Acts of Connecticut 1907, c. 221, automobiles were required to be registered, and a penalty was provided for violation of the law. Under that act it was held that a party could recover against a municipality for injuries sustained from a defect in the highway, although his car was unregistered. Hemming v New Haven, 82 Conn. 661, 74 Atl. 892, 25 L. R. A. (N. S.) 734, 18 Ann. Cas. 240. * * * Subsequently the statute of Connecticut was amended and an additional liability was placed upon the violator. Pub. Laws Conn. 1911, c. 85. This expressly provided, in addition to the penalty previously imposed, that no recovery should be had by the owner, operator, or passenger of an unregistered motor vehicle 'for any injury to person or property received by reason of the operation of said motor while in or upon the public highways in this' state.' Under this act the owner of an unregistered car has been held to be absolutely precluded from maintaining an action for negligence. Stroud v. Water Commissioners, 90 Conn. 412, 97 Atl. 336. No other conclusion could well have been reached, because the taking away of the violator's civil rights was distinctly specified. Nothing was left to implication.

"The Legislature of Maine has not seen fit to impose this liability upon the violator of the registration section, and the court does not feel justified in reading such a drastic clause into the section, and in effect multiplying many times the fine imposed by statute."

In the Cobb Case, the recovery by plaintiff was affirmed. The court said:

"This construction brings us back to the familiar principle that the right of a person to maintain an action for a wrong committed upon him is not taken away because at the time of the injury he was disobeying a statute, provided this disobeyance in no way contributed to the injury. He is not placed outside the pale of the law merely because he was committing a misdemeanor. That would be a wrong to the public, but not to the other party in the civil action. Such violation may in certain cases be evidence of negligence, but it is not conclusive. Gilmore v. Ross, 72 Me. 194; Burbank v. Bethel Steam Mill Co., 75 Me. 373, 46 Am. Rep. 400; Neal v. Rendall, 98 Me. 69, 56 Atl. 209, 63 L. R. A. 668; Wood

v. Me. Cen. R. R. Co., 101 Me. 469, 64 Atl.
833; Moore v. Same, 106 Me. 297, 76 Atl.
871; Kimball v. Davis, 117 Me. 187, 103 Atl.
154; Kidder v. Dunstable, 11 Gray (Mass.)
342; Spofford v. Harlow, 3 Allen (Mass.)
176; Counter v. Couch, 8 Allen (Mass.) 436;
Hall v. Ripley, 119 Mass. 135; O'Brien v.
Hudner, 182 Mass. 381, 65 N. E. 788; Slat-
tery v. Lawrence Ice Co., 190 Mass. 79, 76
N. E. 459; Jaehnig v. Ferguson Co., 197 Mass.
364, 83 N. E. 868; Bourne v. Whitman, 209
Mass. 169, 95 N. E. 404, 35 L. R. A. (N. S.)
701; Holland v. Boston, 213 Mass. 560, 100
N. E. 1009; Holden v. McGillicuddy, 215 Mass.
563, 102 N. E. 923; Conroy v. Mather, 217
Mass. 91, 104 N E. 487, 52 L. R A. (N. S.)
801; Carrington v. Worcester St. Ry., 222
Mass. 119, 109 N. E. 828.

"The application of this governing rule to
the case at bar is obvious. The nonregistra-
tion had no causal connection with the acci-
dent whatever. It no more contributed to the
collision in this case than did the color of the
car. The one was as immaterial as the oth-
er. Therefore the violation of the statute did
not bar the plaintiff's right of recovery.

"This view of the effect of the registration
section is uniformly held, outside of Massa-
chusetts, so far as we have been able to ascer-
tain. Birmingham Ry. & L. Co. v. Ætna Acc.
& Liab. Co., 184 Ala. 604, 64 South. 44; Stov-
all v. Corey Highlands Land Co., 189 Ala. 576,
66 South. 577; Shimoda v. Bundy, 24 Cal. App.
677, 142 Pac. 109; Atlantic Coast Line R.
R. Co. v. Weir, 63 Fla. 69, 58 South. 641, 41
L. R. A. (N. S.) 307, Ann. Cas. 1914A, 126,
and note; Moore v. Hart, 171 Ky. 725, 188
S. W. 861; Lockridge v. Minneapolis R. R.,
161 Iowa, 74, 140 N. W. 834, Ann. Cas. 1916A,
158; Armstead v. Lounsberry, 129 Minn. 34,
151 N. W. 542, L. R. A. 1915D, 628, and note;
Shaw v. Thielbahr, 82 N. J. Law, 23, 81 Atl.
497; Hyde v. McCreery, 145 App. Div. 729,
130 N. Y. Supp. 269; Black v. Moree, 135
Tenn. 73, 185 S. W. 682, L. R. A. 1916E, 1216;
So. Ry. Co. v. Vaughan, 118 Va. 692, 88 S.
E. 305, L. R. A. 1916E, 1222, and note; Derr
v. R. R. Co., 163 Wis. 234, 157 N. W. 753; 2
R. C. L. 1208; 2 Elliott, Roads and Streets (3d
Ed.) § 1115."

We shall now refer to other interesting cas-
es, as follows:

The Court of Appeals of Kentucky is the
court of last resort in that state. That court
refers to the Massachusetts rule as announc-
ing a "cruel and almost savage doctrine."
This opinion of the Kentucky court is in the
case of Moore v. Hart, 171 Ky. 725, 188 S. W.
861. We are going to quote liberally from it,
not only because of what that court says for
itself, but also because the opinion contains
a splendid quotation from the strong Minne-
sota case of Armstead v. Lounsberry, 129
Minn. 34, 151 N. W. 542, L. R. A. 1915D,
628. The Kentucky court says:

"Returning now to the grounds urged for a
reversal, it is vigorously insisted that the plain-
tiff was operating a machine on the public
highway when it was not registered, and had
in his employ an unlicensed chauffeur, both
of which were in open violation of the statu-
tory law of this state, and that these violations
made him a trespasser upon the highway, and
himself and his machine, in the language of
defendant's counsel, 'under the ban of the law'
continuously while on the highway, and that
these violations constituted negligence per se
on his part, depriving him of any right of ac-
tion for injury to himself or to his machine,
and which violations constitute a complete de-
fense to this suit. Strange as it may seem,
we are furnished with authority for this cruel
and almost savage doctrine. It seems that the
courts of Massachusetts give to such violations
the force and effect contended for by the de-
fendant in this case, and we are referred to the
case of Chase v. N. Y. Central R. R. Co., 208
Mass. 137, 94 N. E. 377, as sustaining the doc-
trine contended for. In that case the plain-
tiff was riding in an unregistered automobile,
which collided with a train of the defendant,
producing the injuries sued for, and a recovery
was denied because the machine was unregis-
tered. The court, in disposing of the case, to
the chagrin of the plaintiff and his counsel,
says:

" 'Under the decisions, the operation of the
unregistered automobile is deemed to be un-
lawful in every feature and aspect of it. Ev-
erything in the conduct of the operator that
enters into the propulsion of the vehicle is
under the ban of the law. In going along the
way and entering upon the crossing the ma-
chine is an outlaw. The operator, in running it
there and thus bringing it into collision with
the locomotive engine, is guilty of conduct
which is permeated in every part by his dis-
obedience of the law, and which directly con-
tributes to the injury by bringing the machine
into collision with the engine. He is within
the words of the statute. He is in no bet-
ter condition to recover than a person would
be who was violating the law by walking on
the track of a railroad, and was struck by an
engine when he had reached the crossing of
a highway.'

"The same doctrine seems to be adhered to
by that court in the case of Dudley v. North-
ampton St. Ry. Co., 202 Mass. 443, 89 N. E.
25, 23 L. R. A. (N. S.) 561; Dean v. Boston
Elevated R. R. Co., 217 Mass. 495, 105 N.
E. 616; it being held in the last-named case,
in substance, that all occupants of the unregis-
tered machine were trespassers upon the high-
way, and are entitled to no consideration from
other travelers except to be protected from
reckless or wanton injury. We have been una-
ble to find any other court going to this ex-
tent, although some of them hold that under
certain circumstances, and under the peculiar
facts of the particular case, evidence of the
machine being unregistered, or the chauffeur be-
ing unlicensed, may be introduced as evidence
under the plea of contributory negligence, a
question which we shall hereafter consider
under the peculiar facts of this case. On the
contrary, the courts of Minnesota, Alabama,
Illinois, Pennsylvania, Florida, Kansas, Vir-
ginia, and perhaps others, do not give to such
violations of the statute so broad, and what
might be called destructive, effect as does the
Massachusetts court. In Berry on Automo-
biles (2d Ed.) § 195, the author in discussing
the point under consideration with reference to
the failure of the chauffeur to have obtained a
license says:

" 'And the operating of an automobile with-
out a license, when one is required by law, is

evidence of negligent operation, but does not affect the rights of such person, nor of those riding with him, as travelers, nor bar their right of action or defense in personal injury actions; such persons not being rendered thereby trespassers upon the highway.'

"The case of Armstead v. Lounsberry, L. R. A. 1915D, 628, is a Minnesota case (129 Minn. 34, 151 N. W. 542), and is one growing out of a collision between two automobiles going in opposite directions, which, in this particular, makes it unlike the one we have here, but this fact can have no bearing upon the question now under consideration, which is whether a failure to comply with the law shall constitute a bar to the action. The plaintiff in that case had failed to register his machine, as required by the laws of Minnesota, and the defendant contended that he thereby became a trespasser upon the street and was entitled to no duty from the defendant, except the latter should avoid willfully or wantonly injuring him. It was also shown that in that case the city of Duluth, where the accident occurred, had passed an ordinance requiring all operators of machines to be licensed, and that the plaintiff had not, at the time of the accident, complied with this law. Neither of these violations was permitted to defeat the action, and the court, in the course of the opinion, so forcefully states the reasons that should govern the courts in denying the comprehensive effect of such violations as was insisted upon that we feel authorized to take therefrom the following:

"'The right of a person to maintain an action for a wrong committed upon him is not taken away because he was, at the time of the injury, disobeying a statute law which in no way contributed to his injury. He is not placed outside all protection of the law, nor does he forfeit all his civil rights merely because he is committing a statutory misdemeanor. The wrong on the part of plaintiff which will preclude a recovery for an injury sustained by him must be some act or conduct having the relation to that injury of a cause to the effect produced by it. Sutton v. Wauwatosa, 29 Wis. 21, 9 Am. Rep. 534; Philadelphia, W. & B. R. Co. v. Philadelphia & H. de G. Steam Towboat Co., 23 How. 209, 16 L. Ed. 433. Plaintiff's violation of the law, in order to affect his case, must, like any other act, "be a proximate cause in the same sense in which defendant's negligence must have been a proximate cause in order to give any right of action." I Shearm. & Redf. Neg. 94. A collateral unlawful act not contributing to the injury will not bar a recovery. Hughes v. Atlanta Steel Co., 136 Ga. 511, 71 S. E. 728, 36 L. R. A. (N. S.) 547, Ann. Cas. 1912C, 394, 1 N. C. C. A. 429.

"'Plaintiff's violation of law in this case is of this collateral character. There was no relation of cause and effect between the unlawful act and the collision. The registration of plaintiff's automobile was of no consequence to defendant. The law providing for such registration was not for the prevention of collisions, and had no tendency to prevent collisions. There is no pretense that the registration of plaintiff's automobile would have had any tendency to prevent this collision. Plaintiff's failure to obey the law in no way contributed to his injury, and could not bar his right of recovery. This rule is sustained by the great weight of authority. Birmingham R. Light & P. Co. v. Ætna Acci. & Liability Co., 184 Ala. 601, 64 South. 44; Hemming v. New Haven, 82 Conn. 661, 74 Atl. 892, 25 L. R. A. (N. S.) 734, 18 Ann. Cas. 240; Hughes v. Atlanta Steel Co., supra; Atlantic Coast Line R. Co. v. Weir, 63 Fla. 74, 58 South. 641, 41 L. R. A. (N. S.) 307, Ann. Cas. 1914A, 126; Crossen v. Chicago & J. Electric R. Co., 158 Ill. App. 42; Luckey v. Kansas City, 169 Mo. App. 666, 155 S. W. 873; Shaw v. Thielbahr, 82 N. J. Law, 23, 81 Atl. 497; Hyde v. McCreery, 145 App. Div. 729, 130 N. Y. Supp. 269; Yeager v. Winton Motor Carriage Co., 53 Pa. Super. Ct. 202; Elliott, Roads & Streets, 1115.'

"The court then proceeds to a consideration of the rule as announced in Massachusetts, and concludes by saying:

"'It appears to us the weight of argument, as well as the weight of authority, is against the rule of the Massachusetts cases and in accordance with the rule we have above laid down.'

"Without incumbering this opinion, it is sufficient to say that the opinions of the courts to which we have referred are in accord with the Minnesota court upon this subject, and, were we content to rest our opinion alone upon the greater weight of authority, we would he compelled to disregard the rule as laid down in Massachusetts, and to adopt that prevailing in the other states. But, aside from the weight of authority, we would be unable to agree with the rule as announced in Massachusetts, as it evidently sounds a discordant note to our conceptions of the very basic principles of the law which we learn from the earliest writers are founded on reason and right. For the purposes of this case we do not have to decide whether the statute, requiring the licensing of a chauffeur in this state, or the registering of machines, is one of revenue only, or one looking to the qualifications of the chauffeur and safety of the traveling public upon the highway, because, if it should be regarded as partaking of both, or the latter alone, a violation of it does not render the violator an outlaw, nor deprive him of all consideration dictated by the plainest principles of humanity, nor can the fact that the statute has not been complied with in these respects affect his cause of action, unless such violation has some causal connection with the producing of the injury. In other words, the violations must be the proximate cause of the injury. It is not only so stated in the Minnesota case from which we have quoted, but is recognized everywhere, and by an unbroken line of decisions by this court; the last case being that of Louisville & Nashville R. R. Co. v. Hulette, 171 Ky. 500, 188 S. W. 653. We therefore conclude that there was no error committed in denying to this defensive plea the effect contended for."

We also quote from the Supreme Court of Arizona in the case of Copper Co. v. Garcia, 25 Ariz. 158, 214 P. 317, as follows:

"At the instant of the accident Garcia was riding in an unlicensed automobile. That fact raises the second question: Did that fact affect the liability of the appellant or lessen its duty in the premises? It is not claimed that the legal status of the automobile was the

cause of the accident, or in any manner or degree contributed to it; but it is reasoned that an unlicensed vehicle is an outlaw which has no right on the highways, and is therefore a trespasser to which those rightfully and lawfully going about their business owe no duty of care or caution to avoid injury. The statute regulating the use of automobiles forbids under penalty the use of the highways by an unlicensed automobile. Ordinarily a breach of duty due the state, or violation of a penal statute, does not affect the right of recovery for injuries negligently inflicted, unless there is some relation of cause and effect between them. The failure of the owner of the machine in which Garcia was a passenger to obey the registration laws in no way contributed to the accident, and would seem to furnish no defense to appellant. State ex rel. Oliver Iron Mining Co. v. City of Ely, 129 Minn. 40, 151 N. W. 545, Ann. Cas. 1916B, 189; Gilman v. Central Ry. Co., 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102.

"This conclusion is supported by most of the courts, with the conspicuous exception of the Supreme Judicial Court of Massachusetts. The statutes of Arizona and Massachusetts are in most respects alike. Some of the opinions of the Massachusetts court seem broad enough in their statements to apply to a statute like ours."

The case of Shaw v. Thielbahr, 82 N. J. Law, 23, 81 A. 497, was by the Supreme Court of New Jersey. In that case, the plaintiff was injured in a collision between his automobile and a delivery wagon of defendant. Plaintiff recovered, and the judgment was affirmed. The court, in that case, said:

"The point is made by the appellant that the plaintiff produced a state license for 1911, whereas the accident happened in 1910. The uncontradicted proof, however, was that plaintiff had a license for 1910, which he had turned into the department at the time of trial. Moreover, the fact that the plaintiff was licensed at the time of the accident was not an essential part of his case, or even relevant to the issue as framed, since the possession of such a license has no tendency to avert collisions as do brakes, signal trumpets, and lighted lamps at night. The duty created by the police regulation to have a license and to display its number was not owing to the defendant or created for his benefit, at least as far as the avoidance of accidents is concerned. Hence the effect of the nonobservance of such duty comes within the reasoning of the well-considered case of Fielders v. North Jersey Street Railway Co., 68 N. J. Law, 343, 53 Atl. 404, 54 Atl. 822, 59 L. R. A. 455, 96 Am. St. Rep. 552. What is gained by the display of a license number is, not the avoidance of collisions, but the more ready identification of the machine, and its responsible owner. To the argument that the absence of this means of identification had a tendency to make the plaintiff less careful, the answer is that such a consideration is too remote to be relevant in the legal meaning of that term, which is derived, not by the strict processes of logic, but from the exigencies of trial by jury. Such argument therefore comes within the reasoning of the case of Sutten v. Bell, 79 N. J.

Law, 507, 77 Atl. 42, where upon like ground it was held that the plaintiff's insurance against loss was irrelevant upon the question of his negligence."

[1] We are of the view that Texas should follow the great weight of authority and hold that Price was entitled to the exercise of ordinary care by the railway company. Price was a trespasser against the state, and he could have been fined for his infraction of the statute. He should have paid his license for 1920. He should have also registered his car so as to assist the state in identifying the owner and avoiding the wholesale theft of automobiles as far as possible. It was clearly the intention of our Legislature to derive revenue from this law for maintenance of the roads. It is also true that it was intended to try to avoid theft and run down thieves by reason of the registration statutes. Of course, if Price had stolen this car, he would have trespassed upon its owner. But nothing in the law showed any intent on the part of the Legislature to relieve railway companies of the duty of looking out for automobiles or exercising ordinary care to prevent injuries at public crossings. Our holding in this case does not add any burden whatever to the railways, as we shall now show.

[2] Under the well-settled rule of decision in our state, a railway company owes the duty of keeping a lookout for people wrongfully on the track at any point. Judge Gill, in one of his arguments in the case heretofore mentioned, speaks accurately in this connection as follows:

"A trespasser upon a railroad track who sues the company for injuries suffered through the negligence of its operatives is a trespasser against the party sought to be held. He has unlawfully invaded the defendant's property, and bases his right to recover upon that invasion. His petition must disclose the point where the accident occurred and thus disclose his trespass. Yet in the leading case of Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232, the doctrine is established in this jurisdiction that the defense of trespasser will not avail the company. It is held in that case that the operatives of a railroad engine must at all points keep a reasonable lookout for persons on the track, and owes this duty to all persons. The injured trespasser loses his action not by reason of his trespass but by reason of contributory negligence, and his trespass is considered as one of the facts bearing upon that issue. Ry. v. Hewitt, 67 Tex. 479, 3 S. W. 705, 60 Am. Rep. 32; Artusy v. Ry. Co., 73 Tex. 193, 11 S. W. 177. This doctrine is approved by our present Supreme Court in Ry. Co. v. Watts, 110 Tex. 106, 216 S. W. 391, in a well-considered opinion by Justice Greenwood. It is based upon the fact that a steam engine is a heavy and dangerous machine, that railway lines are of great length, established crossings not always conveniently close together, the right of way not always fenced. It is said the duty of lookout is imposed for the safety of the train and passengers,

and this duty once imposed includes within its protection persons unlawfully on the track. Note the analogy between the operation of a locomotive and the automobile. Note how much more forceful are the reasons for the application of this doctrine to the automobile."

Surely, a man in an automobile on a public highway crossing is less a trespasser, in any event, against the railway company than a man inside their right of way on their track. Therefore, under our Texas decisions, clearly it was the duty of this company to keep a lookout for Price or any one else in an automobile on that crossing. The engineer could not well know that the seal plate on the car was not for 1920. Engineers have no time or opportunity to look that closely into the details of automobiles which are crossing the tracks or about to cross them.

[3, 4] Of course, it is true that the violation of a statute is negligence. But it is equally true that such negligence must be the proximate cause of the injury before it will preclude recovery. This is well settled in the recent opinion of our Supreme Court, speaking through Justice Greenwood, in the case of Waterman Lumber Company v. Beatty, 110 Tex. 225, 218 S. W. 363.

[5] In the case at bar, Price could have made out his case without divulging his failure to pay his license for 1920. It would have been the duty of the railway company to show this and other infractions of the automobile statutes as a defense, and also that such infractions were the proximate cause of the collision.

[6] There is absolutely no evidence in the record that this failure to obey the automobile laws was the proximate cause of this injury. It would have happened just the same if there had been no such infractions of the law. This matter had no more to do with this accident than, as said by the Supreme Court of Maine in the Cobb Case, did the color of the car. There could be a case where the failure in this respect would cause the collision. For instance, if Price was trying to avoid arrest for violation of the criminal statute, and in trying to escape went at a reckless rate of speed and that speed caused the collision, then it would be a defense avoiding his recovery. But there is no evidence in this record showing any connection whatever between this collision and the infraction of these statutes. The trial court and Court of Civil Appeals correctly so held. We have already quoted Chief Justice Fly's language on this point.

What we have said applies to the seventh assignment in the application.

By the sixth assignment it is contended that the jury found Price guilty of a violation of article 820*l* of our Penal Code (Vernon's Ann. Pen. Code Supp. 1918), reading as follows:

"Any person driving a motor vehicle or motorcycle, when approaching the intersection of a public street or highway with the tracks of a steam railroad or interurban railroad, where such street or highway crosses such track or tracks at grade, and where the view of the said crossing is obscured, either wholly or partially, shall before attempting to make the said crossing, and at some point not nearer than thirty feet of the said track, reduce the speed of his motor vehicle or motorcycle to a speed not to exceed six miles per hour before making the said crossing, unless there are flagmen or gates at such crossing and such flagmen or gates show that the way is clear and safe to cross such track or tracks, and provided further that the provision of this section shall not apply to persons crossing interurban or street railway tracks within the limits of incorporated cities or towns within the state."

Question No. 18 submitted to the jury read as follows:

"At what rate of speed was the plaintiff driving his automobile from the time he turned off of the main public highway until the time of the collision?"

To above question, the jury answered: "Six to eight miles."

[7, 8] The distance covered by this question was much more than 30 feet. Just why counsel for the company did not submit this question so that the jury's answer could be applied to the statute is not clear. It was a defense by the company and for its benefit. It was incumbent upon its counsel to present this defense to the jury in a proper way. The answer of the jury does not necessarily mean that at the distance named in the aforesaid statute the rate of speed was in excess of six miles per hour. In fact, the answer does not necessarily mean that the rate *exceeded* six miles per hour at any point in the distance named in the charge. The rate may have been six miles anywhere along the line, or it might have been seven or eight miles per hour. It is impossible to tell just what the jury did mean. If the answer had been *between* six and eight miles, it would have necessarily meant that the speed was in excess of six miles per hour. Or, if the answer had been *from* six to eight miles, it might have been construed to mean *more* than six. But, as the jury returned its answer, it cannot be said that the statute was violated at any point in the space named in the charge, much less at a distance named in the statute.

[9] But, even if the jury had said that the speed exceeded six miles an hour at the point named in the statute, that would not, in any event, have precluded recovery by Price, unless the jury had further found that such excessive speed proximately caused the collision. See Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Waterman Lumber Company v. Beatty, 110 Tex. 225; 218 S. W. 363.

[10] In submitting most of its defenses, the company's attorneys submitted in con-

nection therewith the issue of proximate cause. It did not do so in reference to this issue. Therefore, since it was an issue in which it alone was interested, the company must be assumed to have consented that the trial court pass upon that issue. The court allowed recovery and must have concluded against the company on this issue. There is evidence to sustain such a conclusion. An automobile is just about as easily controlled when going seven or eight miles an hour as it is when running only six miles an hour. The court could well have concluded that the speed had nothing to do with the accident. The jury evidently believed, as it held, that the failure of the employees on the engine to sound the statutory signals was really responsible for the collision.

This disposes of all the assignments in the application which we think could possibly present any difficulties. We think the Court of Civil Appeals correctly decided this case.

Therefore we recommend that the judgment of the Court of Civil Appeals be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.