## SUNSET MOTOR LINES v. BLASINGAME.

### No. 14392.

Court of Civil Appeals of Texas. Dallas.

July 20, 1951.

Rehearing Denied Sept. 21, 1951.

Malone, Lipscomb, & Seay, and Robert N. Watkins, Jr., all of Dallas, for appellant.

George W. Allison, of Dallas, for appellee.

CRAMER, Justice.

Appellee Blasingame filed this suit against appellant Sunset Motor Lines to recover damages alleged to have proximately resulted from the negligence of appellant in a collision when its tractor-trailer collided with his dump truck. On the trial the jury, on special issues, found: (1). Appellant's freight truck prior to the collision was being driven on its left side of the road, (2) which was negligence, and (3) proximate cause of the collision; (7) appellant's driver failed to keep a proper lookout, (8) proximately causing the collision; (9) failed to apply his brakes, (10) which was negligence, (11) proximately causing the collision; (12) failed to reduce the speed of the truck, (13) which was negligence, (14) proximately causing the collision; (15) immediately prior to the collision appellee's dump truck was in a perilous position, (16) which was discovered and realized by appellant's driver, (17) in time to have, in the exercise of ordinary care and the use of all means at hand, avoided the collision with safety to his truck and himself; (18) after such discovery and realization he failed to exercise ordinary care in the use of all means at his command consistent with his and his truck's safety to have avoided the plaintiff's damage, (19) which failure was a proximate cause of the damage to appellee's truck; (20–21) found the damages to appellee's truck to be $890; (22) appellee's driver was not driving his dump truck immediately before the collision on his left side of the road; (25) did not drive his truck on the left side of the road and then cut back to the right side into appellant's truck; (28) the failure of appellee to have a horn on his truck in good working order was not negligence; (30) appellee's driver did not fail to keep a proper lookout; (32) appellee's driver did fail to apply his brakes before the collision, (33) but such failure was not negligence; (35) appellee's driver was fully awake at the time, (37) was not driving at an excessive rate of speed; (40) the collision was not the result of an un-

avoidable accident, and (41) appellant's driver was not acting in an emergency.

After judgment for appellee for $890, costs, etc., on such verdict, appellant, after its motion for new trial was overruled, duly perfected this appeal and here assigns thirteen points of error.

The first two points assert error in the trial court's refusal to submit its requested special issues 7 and 9, being sole proximate cause issues.

Requested issue No. 7 was as follows: "(a) Do you find, from a preponderance of the evidence, that the driving of plaintiff's truck by Pipkins onto his left hand side of the roadway and angling across the road striking defendant's truck in the center line of the highway, if you have so found, was the sole proximate cause of the collision on the occasion in question? Answer 'Yes' or 'No.'" (Lines 7–13, tr. 21.)

Special issue No. 22 as submitted to the jury by the court was as follows: "Do you find from a preponderance of the evidence that plaintiff's driver Pipkin, immediately prior to the collision inquired about herein, was driving plaintiff's dump truck to his left of the center line of the Roadway. Answer 'Yes' or 'No.' Answer: No." (Lines 16–21, tr. 50.) Such issue was followed by issues on negligence and proximate cause with instructions not to answer such issues if issue No. 22 answered "No."

Requested special issue No. 9 is as follows: "Do you find from a preponderance of the evidence that such negligence, if any, was the sole proximate cause of the collision inquired about herein?" (Lines 12–14, tr. 22.)

Special issues Nos. 25, 26 and 27, upon which special issue No. 9 was based and to be No. 26–A, were as follows: "Do you find from a preponderance of the evidence that plaintiff's driver Pipkin drove his dump truck over on his left hand side of the roadway and then cut back to his right hand side of the roadway into defendant's freight truck upon the time and occasion inquired about herein? Answer Yes or No. Answer: No." The jury was then instructed that if they answered issue No. 25, "No," not to answer 26 or 27 being "negligence" and "a proximate cause" issues.

While we are of the opinion there was no error in the refusal of such sole proximate cause issues in connection with the series of issues based on issues 22 and 25 above quoted, since no independent agency or third party was involved, International-G. N. R. Co. v. Acker, Tex.Civ. App., 128 S.W.2d 506, error dis. cor. judg., we are of the further opinion that if there was error, it was harmless error since if submitted, the issues would have been conditionally submitted, based upon affirmative jury answers affirmatively finding the fact situation upon which the issues of negligence and proximate cause were based. The jury having answered that appellee did not do the acts complained of, the negligence, proximate cause, and sole proximate cause issues went out of the case, and the jury, under the proper instructions given by the court, would not have answered them. In the cases cited by appellant the jury found the acts alleged to have been the basis of the negligence and sole proximate cause issues, were in fact committed. Therefore they are not in point.

We are not unmindful of the holding of our Supreme Court in Schuhmacher v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, to the effect that it is the condition at the time of the submission of the case to the jury, and not after verdict, that controls the submission. If the refusal was error at that time, by reason of the record here such error, if any, is now harmless. Being harmless, it is not reversible. The points are overruled.

Points 3 and 4 complain of the submission to the jury of special issue No. 37, as follows: "Do you find from a preponderance of the evidence that plaintiff's driver Pipkin was driving his dump truck at an excessive rate of speed under the facts and circumstances then existing upon the time and occasion inquired about herein?" And the refusal to give his requested charge No. 3, as follows: "Do you find from a preponderance of the evidence, that

plaintiff's driver, Starling Pipkins, immediately prior to the collision on the occasion in question, was driving plaintiff's truck at a speed greater than was reasonable and prudent under the conditions then existing, having regard to the actual and potential hazards, when it was approximately three-fifteen o'clock in the morning and he had had only a few hours of sleep?"

The pleading upon which the objection and requested issue were based is as follows: "(1) In driving at approximately three o'clock A. M. in the dark on the highway at a speed greater than was reasonable and prudent under the conditions then existing, having regard to the actual and potential hazards when he knew that it was specially hazardous since he, Starling Pipkins, had only had a few hours of sleep and it was pitch dark." (Lines 15–21, tr. 12.)

■ The record shows that the only witnesses to the accident were the two drivers involved. Appellant's driver did not testify to the speed of appellee's truck. Appellee's driver testified he was driving about 20 miles per hour. The physical facts show that the front end of each of the trucks involved was badly bent and damaged. Appellee's driver was knocked out temporarily, but appellant's driver did not seem to be hurt, since he got out of his cab immediately after the accident and went around to appellee's driver. The issue submitted was proper as a submission of excessive speed. The issue was appellant's affirmative defensive issue of contributory negligence. The appellant did not request a definition of excessive speed and his objection alone was insufficient to save the error. If he desired more than the court submitted in the way of explanation to the court's issues, it was his duty to request it. Texas Rules of Civil Procedure, rule 279. Points 3 and 4 are overruled.

■ Point 5 complains of the court's refusal of part of his requested charge No. 5, which (omitting formal parts) was:

"Special issue No. ———. (a) Do you find, from a preponderance of the evidence, that plaintiff's driver, Starling Pipkins, on the occasion in question, drove plaintiff's truck onto the south shoulder of the roadway? Answer 'Yes' or 'No'. Answer: ———. If you have answered subdivision (a) hereof 'Yes', but not otherwise, then you will answer this question: (b) Do you find, from a preponderance of the evidence, that plaintiff's driver, Starling Pipkins, after driving plaintiff's truck onto the south shoulder of the roadway, if you have so found in answer to the preceding interrogatory, angled plaintiff's truck across the road from the south side and hit defendant's truck at the center line of the highway? Answer 'Yes' or 'No.' Answer: ———. If you have answered subdivision (b) hereof 'Yes', but not otherwise, then you will answer this question: (c) Do you find, from a preponderance of the evidence, that at the time of going onto the south shoulder and angling plaintiff's truck back across the road, the driver thereof had lost control of plaintiff's truck? Answer 'Yes' or 'No.' Answer: ———. If you have answered subdivision (c) hereof 'Yes', but not otherwise, then you will answer this question: (d) Do you find, from a preponderance of the evidence that Floyd Barker, driver of the defendant's truck, could not have reasonably foreseen that plaintiff's driver, Starling Pipkins, would lose control of plaintiff's truck and angle back north-west across the roadway after getting on the south shoulder of the road? Answer 'Yes' or 'No.' Answer ———." (Line 18, page 19 through line 20, page 20, tr.)

The trial court submitted in substance paragraphs (a) and (b) in special issues 22 and 25 of its charge, but did not submit those contained in paragraphs (c) and (d). There is no error in the trial court's action in not submitting the issues in (c) and (d). Appellant did not request the issues set out in paragraphs (c) and (d) separately as required by Rules 277 and 279 considered together. This point is overruled.

■ Appellant's sixth and seventh points complain of the court's submission of discovered peril issues (Nos. 15 to 19 inclusive) for the reason that there was no evidence to support such issues. We overrule these points for two reasons: (1) The evidence raised the issues, and (2) if they

are not considered, appellee would still be entitled to the judgment rendered by the court on the jury's answers to the other issues submitted to them.

■ Appellant's eighth point complains of the lack of competent evidence to support the jury's finding of damage to appellee's truck. The record shows that appellee himself testified:

"Mr. Blasingame, are you familiar with the value of used trucks in Dallas County, Texas? A. Well, I should be; I buy and sell them quite a good deal, sir.

"Q. Well, are you? A. Yes, sir.

"Q. Were you familiar with the value of used trucks on the 16th day of July, 1949 in Dallas County, Texas? A. Yes, sir.

"Q. Were you familiar with the reasonable cash market value of that truck you owned at that time? A. Yes, sir.

"Q. What was the reasonable cash market value of the truck you had and that was demolished in this collision on the 16th day of July, 1949? * * *

"Q. (By Mr. Allison): What was it, Mr. Blasingame? A. A thousand dollars, sir.

"Q. And what was it immediately after the collision? A. $75.00."

This point is overruled. St. Louis B. & M. Ry. Co. v. Price, Tex.Civ.App., 244 S.W. 642, affirmed Sup.Ct., 269 S.W. 422.

■ Points 9 to 12 assert improper jury argument by appellee's attorney.

Point 9 complains of the following argument: "Now then, they tried to make out like this poor negro was drunk. Just to show you how utterly unfair, how unfair they want to be, but Mrs. Parks told you they gave him every test out there and Mrs. Parks told you he passed them. How unfair can they be? How unfair they must be to try to save a few paltry dollars in this case. I hope as long as I live I will never so worship the Almighty dollar that I will come down here and accuse a poor negro of doing something he wasn't guilty of to try to save a dollar."

The bill was qualified as follows: "The court considered that the argument was proper in view of the fact Starling Pip-kin, the driver of the plaintiff's truck, had been questioned at length about the amount of beer that he had drank and when he had drank it by the defendant's counsel and the further testimony that the plaintiff's driver had been placed in jail following the accident and in further view of the fact that Officer C. M. Lewis a witness for the defendant had testified on a direct examination that on an accident between a white man and a negro that he generally took the statements from the white driver as to what had happened, and, in view of the further fact that Constable R. F. Cox of Irving, a witness called by the defendant testified on direct examination that he could detect the odor of alchohol on the breath of the plaintiff's driver, Starling Pipkin, and the further fact that Mrs. Pat Parks a witness for the plaintiff testified that the officer defendant's witness accused the negro of going to sleep and when he denied it the officer said 'Don't sas me, I will hit you over the head with my gun and kick you in the face,' and that she Mrs. Parks never smelled any intoxicating liquor on the negro truck driver's breath and that he stood every test that they gave him and that they accused the negro there at the scene of being drunk and I certainly do not see how, by any stretch of the imagination the above argument could be construed as referring to the wealth of the defendant corporation in contrast with that of the negro driver, and with the above and foregoing qualification the said Bill is hereby allowed, approved and ordered filed by the Clerk of this Court as a part of this record in this cause."

Point 10 complains of the argument as follows: "There has been nobody treated unfair in this case except colored Starling Pipkin, a lone 'nigger' by himself out on the road with the officers out there abusing him and trying to make him admit that he was asleep when he wasn't and taking the white man's word for everything that went on out there and daring a 'nigger' to dispute it and telling him if he did they were going to clip him over the head with their six-shooter. You talk to me about being unfair; I think that is one of

the most unfair things I ever heard of in my life. You don't have my word; you have the good white lady's word for it who was living there at the side of the road and there has nobody come in here and told you that Mrs. Parks was not a fine citizen out there or worthy of belief. They tell you they want to be fair in these cases. That is all we are doing, Gentlemen of the Jury, we want them to be fair with a poor negro that was out there friendless and alone on that highway at 3:00 o'clock in the morning when that big truck bore down on him and tore the dump truck that he was driving. * * * It happened when the poor negro was trying to dodge that fellow and got off in the ditch to let him have the whole road. That is what happened, and then in order to save that corporation a few dollars they will come down here and tell you 'nigger' got here and came back over here; do you believe that?"

Such bill was qualified as follows: "The court does not certify that the argument quoted above in the said Bill of Exception is prejudicial and inflammatory nor does he certify that the same is a reference to the poverty and social status of the plaintiff's colored driver, Pipkin, as contrasted with the defendant corporation; that there is no reference in said argument to the defendant corporation having any wealth and same was made by the plaintiff's counsel in answer to an argument of defendant's counsel in which he the defendant's counsel was pleading with the jury to be fair to his client a corporation and the Court considered said argument a fair comment on the testimony of the witness Mrs. Pat Parks, where she testified: 'They accused the nigger of going to sleep. He said, "No, I didn't." The officer said "You were asleep." "No, sir," he said. "Don't sas me. I will hit you over the head with my gun and kick you in the face." And the negro says, "Sir, I wasn't getting smart." He said "You was asleep" and he said he wasn't. He says "No, sir, I wasn't asleep." ' And with the above and foregoing qualification the said Bill is hereby allowed, approved and ordered filed by the Clerk of

this Court as a part of the record in this cause."

Point 11 complains of the following argument: "I tell you, Gentlemen of the Jury, that your performance this week is one of your highest duties of citizenship, and that is to come down here and see that that motto on the Supreme Court of the United States when its states, 'Equal Justice under Law,' means just exactly what it says, and that the poorest and humblest and most ignorant of our citizens gets the same protection from our law that the most powerful corporation in existence may expect."

The qualification to such bill is as follows:

"The defendant counsel in qualifying the jury in this case asked each member of the jury panel if they would give the defendant corporation the same fair and impartial trial that they would the plaintiff in this law suit, and in his argument to the jury, the defendant's counsel again reiterated his injunction to the jury to give the defendant corporation the same fair and impartial trial that they would give an individual, and he told the jury that the corporation was entitled to the same fair and impartial trial that an individual should receive and that they should not hold it against the corporation because it was a corporation and I did not consider the argument a reference to the defendant as a corporation, but as a discussion generally of the rights that all citizens and litigants had under the law and I did not consider the phrase 'most powerful corporation in existence,' a reference to the defendant corporation, and I did not consider the argument as a contrasting of the financial condition of the parties or an improper reference to the wealth of the defendant and I refused to entertain an objection to the argument that was not made in the hearing of the opposing counsel, George Allison, because I thought that in fairness to Mr. Allison he should have an opportunity to withdraw his argument if he desired, after the objection was made, and with the above and foregoing qualifications the said Bill is allowed and approved and ordered filed

by the Clerk of this Court as a part of the records in this cause."

The 12th point complains of the following argument: "Now, Gentlemen of the Jury, you will find that issues 4, 5 and 6 are out of this Charge. They were pertaining to a matter which was not raised, and were left out of the Charge for that reason. The reason it wasn't raised in the evidence, it was an oversight on my part, I forgot. You see, I have been down here by myself and didn't have two assistants to help me so that was the reason it was left out."

Which is qualified as follows: "While the language of the counsel for the plaintiff was not in answer to any argument of the defendant, the Court does not certify that the said argument was strictly an appeal to the sympathy of the jury, nor that it was an argument implying that the defendant corporation was so wealthy and powerful that it could afford to have a lawyer and two assistants defending the case in contrast to the more lowly position of plaintiff, nor does the Court certify that it was an attempt by plaintiff's counsel to arouse jury sympathy by contrasting the wealth of the parties. It was at most an explanation of why Issues Four, Five and Six were left out of the charge and the Court is unable to see where plaintiff's counsel on taking the blame for an oversight should have prejudiced the defendant and the plaintiff's counsel in telling the jury that he was down at Court by himself and that the defendant's counsel had two assistants were merely telling the jury something that they had been able to see with their own eyes all through the case and it is the trial court's opinion that if there was any error of the Court, if there was, in failing to instruct the jury to disregard the argument of plaintiff's counsel was a harmless error and therefore with the above and foregoing qualifications to the said Bill of Exception No. Five, it is hereby approved, allowed and ordered filed by the Clerk of this Court as a part of the record in this cause."

We have carefully considered the record and the qualifications to the bills and we find no error evidenced by these assignments. The qualifications to the bills, not excepted to, cure any error which may have been evidenced by the original tendered bill before qualification. They are overruled without further discussion.

Point No. 13 complains of jury argument as follows:

"If it hadn't been, they would have had all kinds of witnesses down here to show Mr. Blasingame was lying about it and not worth near this much. Of course it was worth a thousand ($1,000.00) dollars, so the only answer is, the truck was worth a thousand ($1,000.00) dollars.

"Mr. Seay: We object to the statement—

"Mr. Allison: I wish he would quit pestering me.

"Mr. Seay: I thought you didn't want to hear our side of the case.

"The Court: Address your remarks to the Court.

"Mr. Seay: Object to the statement we would have had all kinds of witnesses down here because there is no evidence to show we had access to the dump truck, and the fact he is arguing we would have brought witnesses in over whom the testimony shows there is none is controlling; it is irrelevant, prejudicial.

"The Court: Sustain the objection and instruct the jury to disregard any testimony about what some other witness might have done in this case. All right, Counsel, go ahead."

The record shows the appellee testified his truck was worth $1,000 before the accident and was in good condition. The error, if any, in the argument was cured by the court's instruction to disregard such argument. Point 13 is overruled.

We have also considered all of appellant's points collectively and find no error, when so considered, sufficient to reverse this case. The judgment below is therefore

Affirmed.

## On Rehearing.

Appellant has in his motion for rehearing strongly complained that our statement in the original opinion in connection with

points 3 and 4 wherein we stated as follows, "The appellant did not request a definition of excessive speed and his objection alone was insufficient to save the error." Appellant's objection was as follows:

"The defendant specially objects to special issue No. 37 of the Court's charge and says that it is improper to inquire whether plaintiff's driver, Pipkins, was driving his dump truck at an excessive rate of speed, in that the term, 'excessive rate of speed,' requires a definition. The jury is thereby left to speculate upon the issue and is given no guide or yardstick with which to make an intelligent answer thereto. In this connection, the defendant respectively shows to the Court that the definition of 'excessive rate of speed' would be at a speed that was greater than was reasonable and prudent under the conditions then existing at the time and on the occasion in question.

"Furthermore, the defendant objects to the Court's charge in that the Court has not taken into consideration whether Pipkins was driving his truck at a speed that was greater than reasonable and prudent under the conditions then existing at the time and on the occasion in question having regard to actual and potential hazards at 3:15 a. m. in the morning, and when Pipkins had three hours sleep, and here tenders the Special Requested Charge No. 3."

Appellant's special requested charge No. 3 is copied in our original opinion and is not a request for a definition, but for a special issue.

The only theory upon which appellant can base his assertion that a definition was requested is that it was so requested in the objection above quoted. He is sustained in that theory under our Supreme Court's holding in approving the Commission of Appeals' opinion in Robertson & Mueller v. Holden, 1 S.W.2d 570; however, since that opinion, Rule 279 has been adopted and, in our opinion, rendered the Robertson-Holden opinion no longer the rule in Texas.

 Judge J. B. Dooley, then a member of the Supreme Court's Advisory Committee on Rules of Procedure, stated in 20 Texas Law Review 32, at page 38 (1941): "The present practice is that a party may save the point by a mere objection to the failure of the court to submit a proper explanation or definition pertinent to some term of technical meaning contained in the trial court's charge. The new rule, changing the practice on that point, will make it necessary for the party who finds any fault with the failure of the court to submit a definition or explanatory instruction to request a substantially correct definition or explanatory instruction as a predicate for any appellate complaint, and as I read it, this requirement holds good whether the missing definition or explanatory instruction relates to a question material to the complaining party's theory of the case or material to the other party's theory of the case."

 Appellant's request in his objection, in our opinion, does not comply with Rule 279 as now worded, nor the spirit of such rule, since such a request is contained in an instrument which covers eleven pages in the transcript dictated by appellant's attorney at the time the charge was tendered him for objections by the trial court. Such is not a separate request. It is true that under Rule 272 as amended the objections to the charge may be dictated and written up later. However, Rule 276 applies specifically to requested issues, definitions and instructions and provides that the court's action on such request shall be endorsed on such request. Rule 279 provides: "Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of a judgment unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment."

The exception contained in the last paragraph of the Rule is not applicable here. In Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, at page 314, syl. 5, in passing on this direct question, it is stated:

"Thus it is seen that the insurance carrier was not objecting to the definitions given by the trial court, but was requesting the trial court to give additional instruc-

tions which the insurance carrier thought would be beneficial to it.

"Under the rule quoted and the conditions stated, the insurance carrier cannot be heard to complain on appeal without having tendered a substantially correct definition or instruction."

See also Barnett v. Barnett, Tex.Civ. App., 206 S.W.2d 273, writ not applied for, Syls. 1, 2.

We have also considered all other assignments in the motion and, finding no error in our former opinion and disposition of the case, they are overruled.

Motion for rehearing overruled.